87 So.2d 593 (1956)
George D. NOELING and Patricia Noeling, his wife, Petitioners,
v.
STATE of Florida, Respondent.
Supreme Court of Florida. Division A.
May 18, 1956.
*594 P. Donald DeHoff, Jacksonville, for petitioners.
Richard W. Ervin, Atty. Gen., and Jack A. Sudduth, Asst. Atty. Gen., for respondent.
THORNAL, Justice.
Petitioners George D. Noeling and Patricia Noeling, his wife, by petition for certiorari seek review of an order of the Circuit Court which affirmed an order of the Juvenile Court declaring the infant daughter of petitioners to be a dependent child and permanently committing the baby to a licensed child-placing agency for adoption.
The points assigned for consideration on review are that the evidence before the Juvenile Judge failed to support the conclusion that the child was dependent and that the order permanently committing the child for adoption was erroneous because of alleged lack of statutory notice to petitioners.
For reasons hereinafter stated it is unnecessary to delineate in detail all of the facts of the unfortunate situation revealed by the record. It is necessary, however, that we summarize the procedural aspects of the case.
On December 28, 1954, a counselor of the Juvenile Court of Duval County filed a petition alleging that the 13-month-old baby of the Noelings was a dependent child because of alleged lack of proper parental care and abandonment. The petition was quite informal but it prayed that the court adjudged the child dependent and that the child be permanently committed to a licensed child-placing agency for adoption. *595 On February 2 and February 7, 1955, extensive testimony was heard by the Juvenile Judge. It is clear that the mother was present at the first hearing and that the mother and father were both present at the second hearing.
On April 28, 1955, after holding the matter under consideration for more than two months, the Juvenile Judge entered an order that the child was dependent and committed her "to the care, custody and control" of a licensed child-placing agency. This order did not permanently commit the baby to the institution for subsequent adoption but the court did retain jurisdiction of the cause and the child for the purpose of making other and further orders "as may from time to time be necessary". There was no appeal from the order of April 28, 1955.
On May 31, 1955, the Juvenile Judge entered another order apparently without further hearing in which he again found the child to be dependent and stated that prior to the making of this order, the mother and father had gone to New Jersey and that the child "is hereby permanently committed to the Children's Home Society of Florida for subsequent adoption". The order recited that the attorney for the parents "specifically waived notice of the appearance of the parents before the Court this day". On appeal to the Circuit Court, this order of May 31, 1955, was reversed for lack of adequate findings of fact.
Thereafter, on September 21, 1955, the Juvenile Judge entered an order of compliance with the mandate from the Circuit Court in which he recited briefly the facts on which he based his conclusion and then reaffirmed the previous order permanently committing the baby to the Children's Home Society for subsequent adoption. The order of the Juvenile Court of September 21, 1955, was appealed to the Circuit Court and on December 1, 1955, the Circuit Judge affirmed the same. It is this order of the Juvenile Court, dated September 21, 1955, and the affirming order of the Circuit Court, dated December 1, 1955, which are submitted to this court for review in the instant proceeding.
Petitioners contend that the evidence submitted to the Juvenile Judge failed to meet the statutory requirements to justify an adjudication of dependency and further that the order permanently committing the child for subsequent adoption was erroneous because of lack of notice to the parents which is required by statute.
The respondent contends that the evidence was sufficient, that the scope of review in this proceeding precludes our consideration of the sufficiency of the evidence and that the court had jurisdiction of the parents which made unnecessary the service of the notice preliminary to the entry of the order of permanent commitment and subsequent adoption.
The record presents for consideration certain aspects of Chapter 39, Florida Statutes 1955, F.S.A., otherwise designated as Chapter 26880, Laws of Florida 1951, generally known as the Juvenile Court Act. It is necessary that we determine for the first time the scope of review available to this court on petition for certiorari attacking an order of the Circuit Court sitting as an appellate court to review the action of the Juvenile Court under the cited statute.
Section 39.09, Florida Statutes, F.S.A., provides that the hearings shall be conducted by the Juvenile Judge without a jury in an informal manner and that the rules of evidence used in equity cases in the Circuit Courts shall apply. Relying on this provision, petitioners contend that we should now review the evidence as we would in an appeal from the Circuit Court in any chancery matter.
Section 39.14, Florida Statutes, F.S.A., authorizes an appeal to the Circuit Court of the Circuit within which the Juvenile Court is established and by Section 39.14 (7), Florida Statutes, F.S.A., it is provided:
"(7) On appeal the circuit court shall decide only whether a lawful order has been entered by the juvenile court, and shall not substitute its judgment for that of the juvenile court in discretionary matters."
*596 By Section 39.14(12), Florida Statutes, F.S.A., any party dissatisfied with the decision of a Circuit Court on appeal may apply to the Supreme Court for writ of certiorari. The pertinent portion of the last cited Section is the following:
"* * * The application for a writ of certiorari and, if the writ is granted, the proceedings in certiorari thereafter, shall be governed by the same law and rules as are applicable to other proceedings in certiorari in the supreme court, * * *."
It is perfectly obvious from an examination of the language of the entire Act as well as the consideration of its legislative history and its historical background that it was the purpose and intent of the Legislature in enacting the Act under consideration to provide a forum which could consider the problems of dependent children in an informal fashion without the necessity of applying the strictness and technicalities that often accompany routine litigation. This is so for the reason that the statute is permeated with indications that in arriving at his conclusion, the Juvenile Judge should in every instance be guided by an effort to consider first and primarily the welfare of the child. While the rights of the parents must, of course, always be observed, nevertheless, these parental prerogatives are to be evaluated in the light of what appears to be the best interests of the juvenile.
By Section 39.14(12), Florida Statutes, F.S.A., this court is directed to apply the same law and rules as are applicable to other proceedings in certiorari when a matter of this nature is presented to us for review. Although this particular problem has not previously been resolved, we are of the view that the situation is strongly analogous to the scope of review heretofore defined by us in appellate matters involving orders of probate courts. The Juvenile Judge in the first instance hears all of the evidence, has an opportunity to see the witnesses and evaluate the credibility of their testimony as they present it to him. A trained and experienced Juvenile Judge as he views the parties and witnesses in person is in a much better position than this court to determine whether or not they should be believed, the state of their varied interests in the outcome and the over-all effect to be given to their testimony from the witness stand.
We therefore hold that in reviewing the order of the Juvenile Judge in matters of this nature, the scope of review is limited to a determination of the question whether he misinterpreted the legal effect of the evidence as a whole or whether in some fashion he departed from the essential requirements of the law. This has consistently been our position in probate matters and we feel that the rule is equally applicable in reviewing orders of Juvenile Courts under Chapter 39, Florida Statutes, F.S.A. For the analogous rule, see In re Thompson's Estate, Fla. 1955, 84 So.2d 911; and In re Zimmerman's Estate, Fla. 1956, 84 So.2d 560, and cases there cited. See also 5 Fla.Jur. "Certiorari" Sections 29 and 31.
By applying this rule to the evidence revealed by the record, we find that the Juvenile Judge had substantial competent evidence upon which to base his conclusion that the child was dependent and that he did not misinterpret the legal effect of the evidence as a whole. It would serve no useful purpose to set forth the evidence in detail. On this point the record has been carefully examined and it leads us to the conclusion heretofore announced.
This brings us then to the second question presented by the petition. The Juvenile Court order of April 28, 1955, which adjudicated the dependency of the child and temporarily committed it to the Children's Home Society was not appealed. It therefore remains an effective order of the Juvenile Court until changed in some fashion by that court which expressly reserved jurisdiction by the order itself. However, the order of May 31, 1955, which further adjudicated the dependency of the child and permanently committed it to the licensed child placing agency for adoption, was reviewed by the Circuit Judge and reversed. *597 The Juvenile Court order of September 21, 1955, merely complied with the requirements of the order of reversal entered by the Circuit Judge and re-established the permanent commitment of the child for subsequent adoption.
We are now called upon to determine whether the aspect of the order which permanently committed the baby for subsequent adoption reflects a departure from the essential requirements of the law because of the failure of the Juvenile Court to notify the parents of the infant that the petition for permanent commitment had been filed and by such notice direct the parents "to show cause why the petition should not be granted" as required by Section 39.11(4) (a), Florida Statutes, F.S.A.
The petitioners contend that in order to commit their child permanently for subsequent adoption, it was necessary that someone file a separate petition, additional to the original petition heretofore described. We do not consider that this was necessary. There is no reason why the original petition cannot cover both a prayer for determination of dependency as well as for an order permanently committing for subsequent adoption. However, although the statute itself provides that it shall be liberally construed in conformity with its declared purpose, it is equally clear that by Section 39.11(4), the Legislature intended to establish an orderly process for notifying the parents that under certain conditions it was contemplated that their child might be permanently removed from their custody and placed under the custody of the State for subsequent adoption by someone else.
Without quoting in detail the provisions of Section 39.11(4), Florida Statutes, F.S.A., it is sufficient to point out that it is contemplated by this Section that the parents of the child should be specifically notified that the drastic action of depriving them of their natural right to their child is contemplated and that they should have an opportunity to defend against the contemplated action by the State. Personal service is required if possible but constructive service is available if the parents are beyond the jurisdiction. We deem it necessary to emphasize the portion of Section 39.11(4), Florida Statutes, F.S.A., which reads as follows:
"(c) Notice as prescribed by this section may be waived, in the discretion of the judge, where the living parents, and any legal guardian, of the child, execute, before two witnesses and a notary public or other officer authorized to take acknowledgments, a written surrender of the child to a licensed child placing agency."
The last cited provision forces us to a conclusion that unless the statutory notice is given to the parents, the only manner in which it can be waived is for the parents to execute a formal written surrender of the child.
We revert to a consideration of the procedure as followed in the instant case. The hearing on the original petition was held February 2 and February 7, 1955. At the conclusion of this hearing the Juvenile Judge, on April 28, 1955, entered an order which merely committed the infant temporarily to the custody of the Children's Home Society. While it is true that by this order, the Judge reserved jurisdiction to enter further orders, we are of the view that due process required that preliminary to the entry of any further order that would have the effect of permanently depriving these petitioners of the custody of their child, they should have been notified as required by the statute or in the alternative that they waive such notice in the manner stipulated by the statute. In the absence of service of notice, the only method by which notice could be waived was that provided by the Act itself. We do not overlook the fact that the Juvenile Court had already acquired jurisdiction of the child and the cause. We are, however, of the view that in order to exercise jurisdiction to the extent of permanently committing the infant for subsequent adoption, after having merely placed the child temporarily in the custody of the Home, compliance with the statutory requirements *598 for notice was essential to a valid subsequent order of permanent commitment. For analogous situations under the adoption law see In re Stonehouse's Adoption, 155 Fla. 223, 19 So.2d 788; and In re Johnson, 157 Fla. 25, 24 So.2d 711. For an analogous principle see Moore v. Lee, Fla. 1954, 72 So.2d 280, 42 A.L.R.2d 1112, where we held that in a proceeding to modify a final decree awarding custody of a minor child, the defendant is entitled to adequate and proper notice of the proposed modification proceeding. Under Section 39.11(4), Florida Statutes, F.S.A., adequate and proper notice was as therein provided.
Jurisdiction of Juvenile Courts under Chapter 39, Florida Statutes, F.S.A., must be exercised in strict compliance with the statutory requirements. We cannot overlook the fact that although the welfare of the juvenile is the guiding star that leads the Judge to his conclusion, nevertheless, the natural right of a parent is not to be lightly regarded. On the contrary, it should be respected with all of its traditional sanctity. To deprive one permanently of his offspring is highly drastic action and the parent should be given every fair and reasonable opportunity to demonstrate by a proper showing that the State should not take his child away from him.
The rule of this opinion has been followed in other states. In the case of In re Frinzl, 152 Ohio St. 164, 87 N.E.2d 583, 588, the Supreme Court of Ohio pointedly held:
"Because of the relationship between parents and children, and because of the social consequences involved, even though juvenile agencies have undoubtedly made a great contribution to social and community welfare, a Juvenile Court cannot make a valid order changing temporary commitment of a dependent child to a permanent one without a service of notice upon the parent of the child, strictly in accordance with the law."
See also 43 C.J.S., Infants, § 8, p. 59; In re Sutton, 132 W. Va. 875, 53 S.E.2d 839; State ex rel. Clark v. Allaman, 154 Ohio St. 296, 95 N.E.2d 753; People v. Spiers, 17 Cal. App.2d 477, 62 P.2d 414.
Although in the case before us the court might upon a further hearing properly come to the conclusion that the unfortunate infant involved should be permanently withdrawn from the custody of the natural parents, we are of the view that due process in the withdrawal procedure require that the parents have a proper opportunity pursuant to notice to defend their parental rights and position. We have not overlooked the fact that the permanent commitment recited that the parents were then out of the state and that their attorney of record waived the notice. However, we are forced to conclude that a waiver by an attorney under such circumstances is not within the general scope of an attorney's authority to waive mere procedural requirements. Involved here was a substantial personal right that could be waived only in the manner provided by law.
The statute involved stipulated expressly the only manner in which the notice could be waived. To accomplish and effect this waiver of notice, the express written consent of the parents was essential. No such consent appears in this record.
In view of the foregoing we are led to the conclusion that due process of law requires that these parents be given an opportunity to appear again before the Juvenile Judge in defense of their position, if any they have, against the permanent commitment of their child to the custody of the State.
For the reasons stated, the prayer of the petition is granted as to that portion of the order of the Juvenile Judge dated September 21, 1955, which permanently committed the infant involved to the custody of the Children's Home Society for subsequent adoption. As to that aspect of the matter, the order is quashed and the cause is remanded for further proceedings consistent with this opinion.
DREW, C.J., and TERRELL and HOBSON, JJ., concur.