106 So.2d 610 (1958)
In re C.E.S. (Juvenile Case No. 20616).
No. A-199.
District Court of Appeal of Florida. First District.
November 18, 1958.
*611 James W. Cotton, Gainesville, for appellant.
F. William Marr, and Nathan Schevitz, Asst. State Atty., Jacksonville, for appellee.
CARROLL, DONALD K., Judge.
This is an appeal from the judgments and orders entered by the Juvenile Court for Duval County on July 31 and August 1, 1957, with respect to the custody of a male child, referred to in these proceedings by his initials, C.E.S. This appeal was first taken to the Circuit Court for Duval County, which court by order transferred the cause to this court pursuant to Rule 2.1 a(5) (d) of the Florida Appellate Rules, 31 F.S.A., and held that a circuit court did not have jurisdiction under Article V, Section 6 of the Florida Constitution, F.S.A., to determine appeals from the juvenile court.
The preliminary question before us, then, is whether this district court of appeal, under Article V of the Florida Constitution, as amended in 1956, has jurisdiction to entertain an appeal from a judgment of the juvenile court of Duval County.
Section 6, Subsection (3) of Article V of the Florida Constitution, as amended, provides as to the appellate jurisdiction of circuit courts:
"They shall have final appellate jurisdiction in all civil and criminal cases arising in the county court, or before county judges' courts, of all misdemeanors tried in criminal courts of record, and of all cases arising in municipal courts, small claims courts, and courts of justices of the peace."
Section 5, Subsection (3) of Article V of the Constitution, as amended, provides in part as to the appellate jurisdiction of district courts of appeal:
"Appeals from trial courts in each appellate district, and from final orders or decrees of county judge's courts pertaining to probate matters or to estates and interests of minors and incompetents, may be taken to the court of appeal of such district, as a matter of right, from all final judgments or decrees except those from which appeals may be taken direct to the supreme court or to a circuit court."
There is no provision in the constitution for the taking of appeals from judgments of the juvenile courts direct to the Supreme Court or to a circuit court, and, therefore, appeals may be taken to this court from the juvenile courts within this district, including the Juvenile Court for Duval County, if juvenile courts are correctly to be considered "trial courts" within the meaning of the provision of Section 5, Subsection (3) of Article V, quoted above.
We hold that a juvenile court is a "trial court" within the meaning of the quoted constitutional provision. In this holding we concur with the well-reasoned opinion of the District Court of Appeal for the Second District of Florida in the case of State of Florida v. J.K., a minor, filed June 25, 1958, and reported in 104 So.2d 113.
Since this court has jurisdiction of this appeal, therefore, we now proceed to a consideration and discussion of the merits of *612 the appeal from the aforesaid judgments and orders of the juvenile court. These judgments and orders grew out of the following situation:
In 1950 the Circuit Court for St. Johns County granted a final decree of divorce to the natural parents of the boy, then six years old, granting the custody of the boy to the mother, with the right of the natural father to visit the boy at reasonable times. Within the next few years both the mother and the father married other parties. The mother left the boy with her sister, a Mrs. Conwell, and her husband, E.P. Conwell, about eighty-five per cent of the time. The mother failed to provide for the support of the boy during the time he was left with the Conwells, although the father had sent money to her for the boy's support.
Mrs. Conwell, the aunt of the boy, died on July 9, 1957, and on the same date a petition was filed in the Juvenile Court of Duval County alleging that the boy was a "dependent" child by reason of the fact his mother was incompetent, and an order was entered by the juvenile court on that date adjudging the boy to be a "dependent" child and committing him temporarily to the custody of his uncle, Mr. Conwell. On July 22, 1957, a hearing was held before the juvenile court.
Testimony was taken of the mother, the father, Conwell, the boy, then 12 years old, the mother's brother, and several other witnesses. On the following day the juvenile court entered an order reciting the many factors considered as establishing the boy as a "dependent" child and ordering that the custody of the boy be committed to Conwell, the boy's uncle. The order further provided that the boy should be permitted to visit his mother until August 2, 1957, at which time another hearing was to be held and a further order entered.
It would serve no useful purpose to detail all of the testimony at this hearing before the juvenile court. At this hearing custody of the boy was sought by the mother and her then husband, by the father and his then wife, and by Conwell, and the evidence they produced at the hearing was offered in support of their claims. As is usual in such situations, the record is full of charges and counter-charges and testimony concerning love and affection and the troubles that had beset the witnesses and the various parties involved. It is a heart-warming, as well as a heart-rending, story that unfolded at the hearing. Near the conclusion of the hearing, the judge cleared the courtroom of the several parties and closely interrogated the boy himself concerning his views and preferences. In his testimony the boy very strongly stated his desire to live with his uncle and against living with his mother or his father.
The mother on July 31, 1957, filed in the juvenile court a motion to dismiss, contending that the court had no jurisdiction to entertain and adjudicate a petition alleging the boy to be a "dependent" child because in 1950 the boy's custody had been awarded to his mother by the Circuit Court for St. Johns County, so that the circuit court had acquired jurisdiction first and still retained jurisdiction. On the same date the juvenile court entered an order denying the motion to dismiss. The next day, August 1st, the mother applied to the Circuit Court for St. Johns County, without notice to the juvenile court or to Conwell, and without advising the circuit court of the juvenile court's action, for an order modifying the divorce decree of 1950, which order was entered by the circuit court. The modification in the order consisted of enlarging the visitation privilege of the natural father, but restated the provision that the mother should have custody of the boy. This application to the circuit court was based upon a stipulation between the mother and the father, the parties to the divorce suit, and the modification order recited that it was based on that stipulation. On the same day the mother filed a new motion to dismiss in the Juvenile Court of Duval County realleging the grounds stated in the previous motion to dismiss and stating *613 that the Circuit Court for St. Johns County had just entered the order awarding the custody of the boy to the mother. The juvenile court, on the same day, entered an order denying the second motion to dismiss. The mother, as the appellant herein, took an appeal from this order of the Juvenile Court of Duval County. The appellee in this appeal is E.P. Conwell. The State Attorney for the Fourth Judicial Circuit, which embraces Duval County, represents the state and the juvenile court upon this appeal.
Only recently this court was faced with a very similar factual and legal situation as that in the present case, in the case of Pendarvis v. State, decided July 3, 1958, and reported in 104 So.2d 651, 652. In that appeal the appellants were the parents of a minor child who was adjudicated by the Juvenile Court of Duval County to be a dependent and his custody awarded to a paternal uncle and aunt. In that case this court, in an opinion written by Chief Judge Sturgis, held:
"Section 39.14, Florida Statutes, F.S.A., governing appeals from the orders of juvenile courts, limits our review to the determination of whether a lawful order has been entered by the juvenile court and we are commanded by the statute not to substitute our judgment for that of the juvenile court in discretionary matters. We may only inquire whether the judge misinterpreted the legal effect of the evidence as a whole or in some other manner departed from the essential requirements of the law. Noeling v. State, Fla., 87 So.2d 593.
"Once a child has been lawfully declared to be a dependent or delinquent child, it becomes a ward of the state and a broad discretion is vested in the juvenile court to do those things which appear to the court to be in the best interest of the child. The question of who is a proper person to have the care and custody of such child is not one that can be directed by the whim, fancy, or caprice of those who had the responsibility and right under God's, nature's, and man's law to nurture, care for, and support their offspring, and who by their own making have forfeited that right and cast the responsibility upon others. Evidence that may be totally inadequate to deprive a parent of the custody of his child in the first instance may be altogether adequate to support the court's refusal to restore custody to the parent once the child has become a ward of the state.
"We are not prepared to say, and the record in this case does not call upon us to do so, where the distinction shall be drawn between the exercise by the trial judge of the reasonable discretionary powers vested in him by Chapter 39, Florida Statutes, F.S.A., and such an arbitrary exercise thereof as would entitle this court to intervene. Each case must stand upon its own footing."
We have carefully reviewed the record in the present appeal, and we are unable to say that the able judge of the juvenile court arbitrarily exercised his discretionary powers, nor that the exercise of his discretion was not in the best interests of the boy, the vital and determinative question in matters of this kind. The record contains sufficient substantial, competent evidence to support the findings of the juvenile court that the boy was a "dependent" child within the meaning of Section 39.01(10), Florida Statutes, F.S.A., and that the best interests of the boy were served by awarding his custody to the appellee Conwell.
The record shows that, since the time of the divorce decree entered in the suit between the boy's parents, the appellant mother has continually suffered from serious physical and mental ailments. The juvenile court in one of the orders appealed from found that after the mother's last operation, *614 which occurred several weeks prior to the trial in this cause, her condition had materially improved. It well may be, therefore, that with the passage of a reasonable time the mother's health may be so restored that she can assume the duties and responsibilities of properly caring for and rearing her son. If so, every consideration should be given to her claim to have the custody and control of her only child. In its order the court retained jurisdiction of the cause and of the child for the purpose of making such other and further orders as may from time to time be necessary. Ample opportunity will thus be afforded the mother later to apply for a modification of the custody order, which petition under proper circumstances may receive the favorable consideration of that court.
Affirmed.
STURGIS, C.J., and WIGGINTON, J., concur.