CARROLL, DONALD K., Chief Judge.
This is the fourth year in which this child-custody case has made an annual appearance in this court. In the present appeal the natural parents of the boy, now eleven years old, have appealed from an order of the Juvenile Court of Duval County denying their petition for the return of the boy’s custody to them and ordering a continuance of the boy’s temporary custody in his paternal uncle and aunt, the appellees herein.
On December 7, 19SS, the boy was adjudged in an order of the said court to be a dependent and his temporary custody was awarded to the appellees. This order has never been appealed. On September 18, 1957, the appellants filed a petition alleging that the appellees had failed properly to care for the boy and that they, the natural parents, were fit, willing, and able to assume their parental obligation to him and prayed that his custody be awarded to them. After hearing the testimony, the Juvenile Court Judge entered an order finding in effect that the appellees had taken good care of the boy and that his best interests would be served by continuing him in their care “for the present.” The appellants appealed from this order to this court and we affirmed the order, as reported in Pendarvis v. State, Fla.App.1958, 104 So.2d 651. In upholding the Juvenile Court, we held in effect that it did not misinterpret the legal effect of the evidence as a whole, did not depart from the essential requirements of the law, and did not arbitrarily exercise its discretionary power.
The' appellants on August 18, 19S8, filed a new petition in the Juvenile Court again praying that the boy’s custody be restored to them. Testimony was taken in the court, which then entered an order finding that it was for the best interest of the boy that his custody be continued, at least for the time being, with the appellees. The appellants appealed from the order to this court, and again we affirmed the order, as reported in Pendarvis v. State, Fla.App. 1959, 115 So.2d 81. We held that on a review of the record we could not say that the court abused its discretion in denying immediate custody to the appellants, and, on the authority of our previous decision, we affirmed the order appealed from.
A similar petition was filed by the appellants on September 23, 1959, and later the Juvenile Court entered an order denying the petition, ordering that the custody of the boy remain with the appellees, subject to all rights and privileges of visitation outlined in the previous orders and retaining jurisdiction of the cause and of the boy for the purpose of making further *426 orders in the cause. Again an appeal was taken to this court, and on April 7, 1960, we dismissed this appeal on motion of the appellees in an unreported order (In Re: William Theodore Pendarvis, Jr., white male, a child, Case No. C-27).
Later the same month the appellants filed another petition in the Juvenile Court, which, after testimony was taken, entered another order on May 23, 1960, denying the petition, from which order the appellants have filed their present appeal.
There is no need for us to restate here the evidence and the applicable principles of law which are discussed in our opinions rendered in the first two appeals and reported in 104 So.2d 651 and 115 So.2d 81. It is, however, appropriate to comment upon the nature of the evidence presented before the Juvenile Court on behalf of the appellants in support of their petitions since September 1, 1959, when this court entered its opinion and judgment affirming the order of the Juvenile Court on the second appeal.
Following our affirmance of the order on the second appeal, on October 6, 1959, a hearing was held before the Juvenile Court at which testimony was heard on behalf of the natural parents, the appellants here, and the uncle and aunt, the appellees. Briefly stated, the testimony for the appellants tended to show that the natural parents had rehabilitated themselves and had become fit to bring up the subject boy, while the testimony for the appellees was to the effect that the uncle and aunt had very well taken care of the boy and were fit to continue to do so. Following the third appeal, which we dismissed as mentioned above, further testimony was taken on May 13, 1960. At this hearing most of the witnesses who had testified on October 6, 1959, testified again and adopted the testimony they had given at the previous hearing as still true. They and the other witnesses also testified to the same effect as the testimony at the previous hearing — ■ namely, the appellants’ witnesses testifying that the natural parents were fit to take back their son and the appellees’ witnesses testifying that the uncle and aunt were qualified to continue to have custody of the boy.
Detailing this testimony in this opinion would needlessly extend it, and all we need to do is to call attention to the fundamental rule that the principal and overriding consideration in a child-custody case, such as this, is the welfare of the child himself, and there was ample evidence before the court at each of the hearings in which testimony was taken from which the court could properly conclude, as it did, that it was in the best interests of the boy here that his custody remain with his uncle and aunt, the appellees in this appeal. While some of the evidence did indicate that the parents had done much to rehabilitate themselves, the evidence also convincingly showed that the boy, while in the custody of the appellees, had been well and lovingly taken care of by them and had developed fine traits of character in their care.
As we pointed out in the first appeal, in Pendarvis v. State, Fla.App.1958, 104 So.2d 651, 652, Sec. 39.14, Florida Statutes, F.S.A., governing appeals from orders of juvenile courts,
“ * * * limits our review to the determination of whether a lawful order has been entered by the juvenile court and we are commended [commanded] by the statute not to substitute our judgment for that of the juvenile court in discretionary matters. We may only inquire whether the judge misinterpreted the legal effect of the evidence as a whole or in some other manner departed from the essential requirements of the law. Noeling v. State, Fla., 87 So.2d 593.”
In the same opinion we also pointed out that, once a child has been lawfully declared to be a dependent child (as in the instant appeal), he becomes a ward of the state, and a broad discretion is vested in the- *427 Juvenile Court to do those things which appear to the court to be in the best interest of the child. We also held:
“The question of who is a proper person to have the care and custody of such child is not one that can be directed by the whim, fancy, or caprice of those who had the responsibility and right under God’s, nature’s, and man’s law to nurture, care for, and support their offspring, and who by their own making have forfeited that right and cast the responsibility upon others. Evidence that may be totally inadequate to deprive a parent of the custody of his child in the first instance may be altogether adequate to support the court’s refusal to restore custody to the parent once the child has become a ward of the state.”
Applying the above principles to the record before us in the present appeal, we hold that the order appealed from is within the broad discretion vested in the Juvenile Court and that in entering such order the court did not misinterpret the legal effect of the evidence as a whole and did not depart from the essential requirements of the law.
Cases of this kind, involving the conflicting claims of natural parents and near relatives to the custody of a child, whom all of them appear to love, would require in the trial and appellate courts the “wisdom of Solomon,” which we do not profess to possess, if it were not for the fact that there are established principles which the courts are bound to apply in their consideration and determination. The basic principle and by far the most important is that the custody of the child should be awarded in accordance with the best interests or welfare of the child. All other considerations inconsistent therewith must give way in order to give effect to this overriding principle.
In this and in the previous appeals the appellants have relied heavily upon the references which the courts have frequently made to the “God-given right” of the natural parents to the care, custody, and companionship of their children. Along with other courts, we recognize this right, but we must also acknowledge the established rule that this right is not absolute under our law but is subject to the overriding principle that the polestar is the best interest of the child. This fact was recognized by the District Court of Appeal, Second District of Florida, in the case of Roy v. Holmes, Fla.App.1959, 111 So.2d 468, 470, wherein the court declared that the right of a natural parent to the custody of his children “is not absolute as against the actual welfare of the child.” We elaborated on this point in our opinion in Johnson v. Johnson, Fla.App.1959, 114 So.2d 338, 341, when we said:
“In other words, as we conceive the rule, while a parent has a natural God-given legal right to enjoy the custody, fellowship, and companionship of his offspring, that does not mean that under all circumstances a parent will be awarded the custody of his or her child against the claims of relatives or friends, as the case may be. In the final analysis it depends upon the ultimate welfare, or the best interest, of the child, which is the polestar or controlling principle to be observed.”
In the present appeal the testimony offered by the appellants and discussed earlier in this opinion related almost exclusively to the question of the rehabilitation and fitness of the natural parents and virtually none was offered by them to prove other facts involved in the basic issue of the best interest of the boy.
For the reasons stated above the order appealed from must be and it is affirmed.
Affirmed.
STURGIS, J., concurs.
WIGGINTON, J., dissents.