294 So.2d 318 (1974)
In re in the Interest of Vincent CAMM et al.
No. 43796.
Supreme Court of Florida.
May 1, 1974.
Rehearing Denied June 7, 1974.
*319 Warren S. Schwartz, Miami Beach, and Bruce S. Rogow, Coral Gables, for appellant.
Myles J. Tralins, Miami, and Chester G. Senf, Jacksonville, for appellee.
BOYD, Justice.
This cause is before us on appeal from the Circuit Court, Dade County, Juvenile and Domestic Relations Division. The trial court, in its final Order, impliedly passed upon the constitutionality of Section 39.11(2) (a) (4), Florida Statutes, F.S.A.,[1] giving this Court jurisdiction of the direct appeal under Article V, Section 3(b)(1) of the Constitution of the State of Florida, F.S.A. Harrell's Candy Kitchen v. Sarasota-Manatee Air. A., 111 So.2d 439 (Fla. 1959); Demko's Gold Coast Trailer Park v. Palm Beach County, 218 So.2d 745 (Fla. 1969).
The facts of this case are as follows: All five (5) children of Stanley and Geraldine Camm have been brought into the care of the Division of Family Services, but only three (3) of the children are involved in this permanent commitment case. Vincent, now 12, was adjudicated dependent for a second time at the age of 2 1/2 as a result of his parents being evicted from their apartment for the deplorable condition in which they maintained the premises *320 and for non-payment of rent. Jess, now 9 years old, was brought into the Division's care and custody when the mother left him as a three-month old child in a bruised condition with a babysitter. John Paul, presently 6 years old, was left at the age of 2 years with a babysitter while the father was hospitalized and after the mother had left the family; after the mother heard that John Paul was under the Division's care, she left Florida for a year and a half, during which time she was imprisoned in Texas and, upon release, moved to Ohio where she was treated as an outpatient at a mental hospital in Dayton. Although the mother has visited John Paul once, she has not visited either Jess or Vincent since a time immediately after the children came into the Division's care. The father has never visited the children and has not contested this petition for permanent commitment. The parents have experienced marital trouble since 1959, but they have not sought marriage counseling. Although the mother testified that they could contribute to the children's support, the parents never offered to do so. The Division's expert witness testified that the parents had failed to provide the nurturing and the emotional, as well as the financial, care that the children need; that it was doubtful that they could do so in the future; that a return of the children to the parents would only be temporary, inevitably resulting in their return to the agency; that removal from the foster home on a temporary basis, would have a violent effect on the children; that the parents' conduct has been a detriment to the children's welfare, and that it would be to the children's best interests for them to be permanently committed to the Division of Family Services for subsequent adoption.
Based upon the evidence before it, the Court found that the children were abandoned by their natural parents who had neglected to give them parental care and protection; that the natural parents were unfit parents by reason of their conduct and conditions which are seriously detrimental to the children's welfare; and that it is manifestly to the best interest of the children to be permanently committed to the State's Division of Family Services.
While Florida courts have recognized the "God-given right" of parents to the care, custody and companionship of their children, it has been held repeatedly that the right is not absolute but is subject to the overriding principle that it is the ultimate welfare or best interest of the child which must prevail. Noeling v. State, 87 So.2d 593 (Fla. 1956); In re: Pendarvis, 133 So.2d 424 (D.C.A. 1961).
Appellants attack Section 39.11(2)(a)(4), Florida Statutes, F.S.A., as unconstitutionally vague and violative of fundamental due process. We find this contention to be without merit. The issue of vagueness and ambiguity of a similar statute was ably discussed in Minor Children of P.E. Caruthers, 323 S.W.2d 397 (C.A.Mo. 1959). After tracing the early concept parens patriae from the jurisdiction of courts of chancery in feudal times to modern codification, the Court concluded that the words of the statute have acquired an accepted legal meaning and, therefore, are not vague and indefinite. Further, the Court observed that the statute deals with children in need of care which they are not receiving, and that, since this situation may arise in so many ways, it would be impossible to state them all.
Likewise, we find and so hold that Section 39.11(2)(a)(4), Florida Statutes, F.S.A., is clear, unambiguous, and does not violate fundamental due process. Because circumstances warranting the protection of children from family abuse and neglect may arise in such a variety of ways, we do not propose to limit the application of the statute by detailing examples of proscribed conduct. We observe, however, that mere economic conditions of a family should not be determinative of the matter and that, for the benefit of the child involved, the action by the court should not be delayed.
*321 We have carefully examined the record and find that the juvenile judge neither misinterpreted the legal effect of the evidence as a whole, nor did she depart from the essential requirements of law in her findings of fact. Noeling v. State, supra; Grant v. Corbitt, 95 So.2d 25 (Fla. 1957).
Appellants having demonstrated no reversible error, the judgment of the trial court is affirmed.
It is so ordered.
ADKINS, C.J., and ERVIN, McCAIN and CARLTON (Retired), JJ., concur.
NOTES
[1] Powers with reference to a dependent or delinquent child or child in need of supervision. 
"(2) (a) When any child shall be adjudicated by a juvenile court to be a dependent child, the juvenile court having jurisdiction of the child shall have the power, by order, to:
* * * * *
"4. Permanently commit the child to a licensed child-placing agency, or the division of family services, willing to receive the child, for subsequent adoption, if the juvenile court finds that the child has been abandoned by the natural parent or parents ... of of the child; or that the parent or parents ... have substantially and continuously or repeatedly refused, or though financially able have neglected, to give the child parental care and protection; or that the parent or parents ... are unfit by reason of their conduct or condition, which is seriously detrimental to the child's welfare; and if the court finds that it is manifestly to the best interest of the child to do so."