422 So.2d 861 (1982)
V.C., a Juvenile, Petitioner,
v.
The Honorable Ralph B. FERGUSON, Jr., Judge of the Circuit Court of the 11TH Judicial Circuit in and for Dade County, Florida, Juvenile Division, Respondent.
No. 82-323.
District Court of Appeal of Florida, Third District.
April 20, 1982.
*862 Bennett H. Brummer, Public Defender and Andrew M. Kassier, Asst. Public Defender, for petitioner.
Jim Smith, Atty. Gen., and Calianne P. Lantz, Asst. Atty. Gen., for respondent.
Before SCHWARTZ, DANIEL S. PEARSON and JORGENSON, JJ.
DANIEL S. PEARSON, Judge.
We have before us the juvenile's petition seeking the issuance of a writ prohibiting further delinquency proceedings on the ground that he was entitled to discharge when not brought to trial within the time prescribed in Florida Rule of Juvenile Procedure 8.180. The State initially contends that review of the trial court's denial of discharge must await the outcome of the case and be by direct appeal of a delinquency adjudication if one results. Thus, the State asks us to deny extraordinary relief without regard to the merits of the juvenile's claim. We reject the State's jurisdictional contention and, on the merits, grant the writ.

I.
The Fourth District Court of Appeal, in a spate of recent decisions, holds that prohibition does not lie to remedy a speedy trial rule violation. See Hunter v. Franza, 405 So.2d 1035 (Fla. 4th DCA 1981); Lowe v. Price, 405 So.2d 308 (Fla. 4th DCA 1981); Sherrod v. Franza, 396 So.2d 1136 (Fla. 4th DCA 1981), review granted, No. 60,683 (Fla. January 21, 1982). In our view, these holdings, which stand alone, depart, contrary to the rule of Hoffman v. Jones, 280 So.2d 431 (Fla. 1973), from well entrenched Supreme Court authority. See State ex rel. Soodhalter v. Baker, 248 So.2d 468 (Fla. 1971); Pena v. Schultz, 245 So.2d 49 (Fla. 1971); Wincor v. Turner, 215 So.2d 3 (Fla. 1968); Dickoff v. Dewell, 152 Fla. 240, 9 So.2d 804 (1942); Woodward v. Petteway, 123 Fla. 892, 168 So. 806 (1935); Feger v. Fish, 106 Fla. 564, 143 So. 605 (1932). Even if it were arguable that the foregoing Supreme Court decisions are distinguishable and that, therefore, Hoffman v. Jones, supra, is no barrier to change, we are not persuaded that the distinctions made by the Fourth District in its seminal case of Sherrod v. Franza, supra, lead to the conclusion reached by that court that:
"[T]he preferable rule would seem to be that neither mandamus nor prohibition is an appropriate medium for review of a trial court's order denying a motion for discharge based upon a violation of the speedy trial rule. Mandamus lies to compel the performance of a ministerial act. Its application in a speedy trial rule context assumes a lack of jurisdiction. Prohibition is the appropriate means for preventing a court from proceeding where it has no jurisdiction or where it seeks to act in excess of its jurisdiction. *863 "While violation of an accused's constitutional right to speedy trial may, under appropriate circumstances, divest the court of its jurisdiction, it seems clear that violation of the procedural rule is of an entirely different character. The accused may waive the strictures of the rule expressly or, by his actions, toll the running of the period. Such characteristics are suggestive of authority rather than power. It is power that is the essence of jurisdiction." Id. at 1140.
First, the line between the constitutional speedy trial violation and the rule or statute violation is not as bright as Sherrod suggests. While it certainly may be said that the issuance of the writ of prohibition in Pena v. Schultz, supra, was in respect to a purely constitutional claim that the right to a speedy trial had been denied, the same cannot be said of the writs issuing in Wincor, Dickoff and Feger. In each of the latter cases, the defendant-petitioner, having complied with then applicable speedy trial statutes by filing demands for trial in each of the prescribed number of successive terms of court, sought discharge after not having been brought to trial as the statute required during the last of those terms.[1] Admittedly, the cases advert to a denial of the petitioners' constitutional rights, but they do so only in the sense that the statute involved was designed to effectuate or insure the constitutional right, see Wincor v. Turner, supra; was a legislative determination of the maximum delay which would be tolerated under the Constitution, see Feger v. Fish, supra; or was a manner of safe-guarding the constitutional right, see Dickoff v. Dewell, supra. See also Turner v. Olliff, 281 So.2d 384 (Fla. 1st DCA 1973), and State ex rel. Reynolds v. Willis, 255 So.2d 287 (Fla. 1st DCA 1971) (both noting that speedy trial rule represents enlightened effort to implement constitutionally guaranteed right to a speedy trial). Thus, extraordinary relief was accorded in each of these cases because the speedy trial statute, "declaratory of the rights guaranteed under the constitutional provisions," see State ex rel. Curley v. McGeachy, 149 Fla. 633, 641, 6 So.2d 823, 827 (1942), had been violated. Since speedy trial rules are, in like manner, merely declaratory of the underlying constitutional right to a speedy trial, it would appear that when a defendant asserts his right to discharge because of a rule violation, under the authority of Wincor, Dickoff and Feger, the constitutional right to a speedy trial is implicated, and a defendant would be entitled to extraordinary relief to enforce that right.[2]
Sherrod insists, however, that Wincor, et al. are cases involving the assertion of a constitutional right and are thus distinguishable from a rule case. While, in our view, the distinction is contrived, since clearly no constitutional claim independent of the statute was made in those cases, it may be, nevertheless, that any continued reliance on Wincor, Dickoff and Feger is unjustified in light of State ex rel. Soodhalter v. Baker, supra. In Soodhalter,[3] the Supreme Court addressed its jurisdiction to entertain petitions for writs of prohibition involving claims of speedy trial denial:
"Prior to the 1956 Florida constitutional revision this Court could have entertained the grant of an original writ of prohibition in this case, through language of Article V, Section 5, then reading: "The court shall have power to issue writs of *864 mandamus, certiorari, prohibition, quo warranto, habeas corpus, and also all writs necessary or proper to the complete exercise of its appellate jurisdiction.' (Emphasis added). See Feger v. Fish, [supra].

"The 1956 Article V revision, however, created a fundamental change in the Court's constitutional power to accept an original writ of prohibition through Section 4(2), thereof, not stating: `The supreme court may issue * * * writs of prohibition to * * * the trial courts when questions are involved upon which a direct appeal to the supreme court is allowed as a matter of right.' Subsequent to this revision, this Court has entertained original writs of prohibition in speedy trial cases only where it was asserted that a constitutional right to speedy trial, independent of rights under [§ 915.01, Fla. Stat. (1970)] was violated.[4] See Pena v. Schultz, 245 So.2d 49 (Fla. 1971); Loy v. Grayson, 99 So.2d 555 (Fla. 1957). Inasmuch as relator in the instant case asserts only a statutory right to speedy trial, this Court is without jurisdiction to entertain her suggestion." Id. at 470.
The significance of Soodhalter to the present case lies not in its holding that the Supreme Court's post-1956 constitutional authority to issue a writ of prohibition in respect to speedy trial claims is limited to cases involving independent constitutional claims. Instead, its significance is the holding that there is no similar jurisdictional impediment in the district courts of appeal, and that in those courts prohibition is the proper remedy for asserted speedy trial rule violations.
Thus, unconvinced by Sherrod, we are unable and see no reason to depart from the well-established, long-standing and wide-spread decisions which have prohibited trial courts from putting a defendant on trial after a speedy trial violation has occurred. See, e.g., Durrance v. Rudd, 398 So.2d 1012 (Fla. 1st DCA 1981); Ballard v. Kaney, 397 So.2d 1042 (Fla. 5th DCA 1981); Bates v. Keating, 396 So.2d 1172 (Fla. 5th DCA 1981); In the Interest of M.B. v. Lee, 388 So.2d 1364 (Fla. 5th DCA 1980); State ex rel. Smith v. Nesbitt, 355 So.2d 202 (Fla. 3d DCA 1978); State ex rel. Mullen v. Swigert, 352 So.2d 962 (Fla. 1st DCA 1977); State ex rel. Mitchell v. Beverly, 352 So.2d 535 (Fla. 1st DCA 1977); State ex rel. Dean v. Booth, 349 So.2d 806 (Fla. 2d DCA 1977); Canup v. Langston, 341 So.2d 1069 (Fla. 2d DCA 1977); Schuty v. State, 281 So.2d 507 (Fla. 1st DCA 1973); Turner v. Olliff, supra; State ex rel. Reynolds v. Willis, supra.
It is much too late in the day to analogize rulings on speedy trial violations to other rulings which might dispose of a case before trial and to suggest that since we have not traditionally granted extraordinary review of the latter, we should now stop granting extraordinary review of the former. See Bates v. Keating, supra (Cowart, *865 J., dissenting). In this state, speedy trial violations have historically been accorded review by prohibition and mandamus, not simply because immediate review might be dispositive of the case, but because of the underlying constitutional right involved. This very same history of according extraordinary relief convinces us that the omission in the Florida Rules of Appellate Procedure of a provision for an interlocutory appeal by the defendant from an order denying a motion for discharge on speedy trial grounds does not demonstrate, as has been suggested, that review was therefore not intended, see Bates v. Keating, supra (Cowart, J., dissenting), but instead recognizes that entitlement to review by prohibition and mandamus is otherwise well settled. See State v. Steinbrecher, 409 So.2d 510 (Fla. 3d DCA 1982).
We are, moreover, not persuaded that were we addressing for the first time the question of the availability of pretrial extraordinary relief for one claiming a violation of speedy trial rights that we would follow Sherrod. Its thesis is that because there is a "plethora of petitions that these days inundate the appellate courts," review of an alleged speedy trial rule violation should await the outcome of the case.[5] While there may be justification for the position that review of a purely constitutional claim that a speedy trial has been denied, involving, as it often does, an evaluation of the extent of the prejudice to the defendant caused by the delay, see Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), should await the outcome of the trial, see United States v. MacDonald, 435 U.S. 850, 98 S.Ct. 1547, 56 L.Ed.2d 18 (1978), there is no similar justification for postponing decision on the simple and straightforward issues of whether the defendant was brought to trial within the time prescribed by the rule and was available for trial, neither of which issues involves the question of actual prejudice.

II.
We turn now to the merits of the case. On July 18, 1980, the juvenile was arrested on a charge of burglary. On August 27, 1980, the State filed a petition for delinquency, charging him with burglary and grand theft. On September 4, 1980, the State attempted to serve the juvenile with a summons to appear in court on September 10, 1980. The summons was directed to the juvenile at 16390 Southwest 218th Avenue, Miami, Florida, the address listed as his residence address on the arrest affidavit. The summons was returned unserved with the notation "no longer at this add[ress] as per owner."
The State made no further attempts to locate the juvenile, notwithstanding that a local business address was also listed on the arrest affidavit. A pick-up order was issued on September 10, 1980, when the juvenile failed to appear for sounding. The speedy trial period expired on October 16, 1980.
More than a year later, on November 13, 1981, the juvenile appeared for sounding.[6] The pick-up order was quashed, the Public Defender was appointed to represent the juvenile, and a plea of denial was entered on the juvenile's behalf. An adjudicatory hearing was scheduled for December 7, 1981.
On December 7, 1981, the juvenile moved for discharge alleging a violation of his speedy trial rights under Florida Rule of Juvenile Procedure 8.180(a). The record, without dispute, reflects that (a) the juvenile had been permanently committed to the Department of Health and Rehabilitative Services (HRS) since 1973,[7] and that the address where service was attempted on *866 September 4, 1980, was a State operated foster home; (b) no effort was made to locate the juvenile through HRS, and no attempt to serve the juvenile at the business address listed on the arrest affidavit was ever made; (c) the juvenile never had notice of any sort of the September 10, 1980, hearing.
At a hearing on the motion for discharge, the State conceded:
"At this point in time, the State would cede [sic] that perhaps the pick-up Order was erroneously issued in this case. The fact that the child was in custody, albeit, for a  a dependency purpose, as opposed to a delinquency purpose, that HRS could have, perhaps utilized some more diligence, in this case, and tried to find where the child was located in another foster home. But, at this point in time, State would argue to the Court that even if the pick-up Order was issued erroneously, the speedy trial period should be tolled, or extended, in this particular case, in the interest of justice."
Over the juvenile's objection, the court extended the speedy trial period to January 6, 1982, denied the motion for discharge, and granted a stay of proceedings in the trial court to allow the juvenile to seek relief here.
A juvenile charged with an offense in the State of Florida has a right to be brought to trial within ninety days of his arrest. Fla.R.Juv.P. 8.180. Where the State fails in its duty to bring a juvenile to trial within the prescribed time, the juvenile is entitled to discharge. C.S. v. State, 390 So.2d 457 (Fla. 3d DCA 1980); In the Interest of R.L.P. v. Korda, 380 So.2d 1329 (Fla. 4th DCA 1980). Since it is clear that the juvenile failed to appear at the sounding on September 10, 1980, but never received notice of that court hearing, his right to discharge turns on the question of whether he or the State was responsible for his non-appearance. C.S. v. State, supra, at 458; In the Interest of R.L.P. v. Korda, supra, at 1330.
Where, as here, the juvenile's unavailability for trial is relied upon to defeat his motion for discharge, the State has the burden of going forward with evidence to show that unavailability. State ex rel. Smith v. Nesbitt, supra. In the present case, that burden was not satisfied. There were at least two possible and readily available ways for the State to locate and notify the juvenile after the single unsuccessful attempted service on September 4, 1980. First, the arrest affidavit contained a second and complete address for the juvenile at his place of employment. No service was attempted there. Second, as counsel for the State conceded below, the State could have simply contacted HRS in order to ascertain the juvenile's new residence. This, too, was not done. In short, the record demonstrates that the State failed to use even minimal diligence in carrying out its obligation to inform the juvenile of the date of his sounding.
In Thigpen v. State, 350 So.2d 1078 (Fla. 4th DCA 1977), the defendant was arrested by the City of Orlando police and released. At that time, he gave the police his parents' Alabama address where he often stayed, as well as the address of his place of employment in Tampa, Florida. After an indictment was returned, the Orange County Sheriff's Office forwarded to the sheriff's office in Alabama a capias to take the defendant into custody. They received no response and at no time checked with the City of Orlando police for any further information as to Thigpen's possible whereabouts. In short, "no other effort to locate the defendant was made." Id. at 1079 (emphasis supplied). Well after the expiration of the speedy trial period, the defendant was taken into custody. In reversing the denial of the defendant's motion for discharge, the Fourth District held:
"While [the adult speedy trial rule] does not require the State to make exhaustive efforts to locate an accused in order to establish some evidence of non-availability, the Rule does require of the State something more than just sending a warrant to out-of-state authorities without a follow-up." Id. at 1080 (citations omitted).
*867 Similarly, more than the token effort to notify the juvenile which occurred in the present case is required. Compare, e.g., Williams v. State, 383 So.2d 722 (Fla. 1st DCA 1980); State ex rel. Green v. Patterson, 279 So.2d 362 (Fla. 2d DCA 1973).
Finally, neither the State's motion to extend the speedy trial period nor the trial court's order thereon complied in any respect with Florida Rule of Juvenile Procedure 8.180(d). See C.S. v. State, supra; Muller v. State, 387 So.2d 1037 (Fla. 3d DCA 1980); In the Interest of R.L.P. v. Korda, supra; State ex rel. Smith v. Rudd, 347 So.2d 813 (Fla. 1st DCA 1977).
The writ of prohibition is issued, and the trial court is directed to discharge the petitioner.
NOTES
[1] Wincor and Dickoff proceeded under Section 915.01(2), Florida Statutes, which required written demands in three successive terms and called for discharge if trial was not held before the third full term. Feger alleged he was entitled to discharge under Section 8362, Compiled General Laws (1927), and Section 6057, Revised General Statutes (1920), the provisions of which were similar to Section 915.01(2).
[2] Moreover, that the defendant is pursuing a right granted under a rule or statute should not affect his entitlement to relief. See North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); Herring v. State, 411 So.2d 966, 970 n. 11 (Fla. 3d DCA 1982).
[3] Soodhalter is not referred to in the Sherrod opinion.
[4] Dickoff, not mentioned in Soodhalter, was decided before 1956 and under Soodhalter would have been, as Feger, correctly decided. Wincor was decided in 1968 and was not discussed in Soodhalter. Wincor, however, is a mandamus case, and the Soodhalter holding is inapplicable to mandamus. See State ex rel. Atwood v. Baker, 250 So.2d 869 (Fla. 1971). In Atwood, the State, relying on Soodhalter, contended that the Supreme Court had no jurisdiction to issue a writ of mandamus to remedy a statutory speedy trial violation. The court stated:

"The State urges that this cause also be transferred, even though here on mandamus. In making this suggestion, the State overlooks the fact that prohibition is set apart from other extraordinary writs in the Constitution by the requirement that a direct appeal be involved as a matter of right. Thus, while mandamus is appropriate where a state official is named as respondent, prohibition is appropriate where we would entertain an appeal as a matter of right. The Soodhalter case was transferred because it came on prohibition when the underlying constitutional requirement for that avenue of jurisdiction was not satisfied." 250 So.2d at 870 (footnote omitted).
Thus, Atwood reaffirms the proposition that, in any event and in any court, mandamus lies to remedy a speedy trial violation. This proposition is totally overlooked in Sherrod.
[5] If we were to base our decision on considerations of judicial economy, the stronger argument is that that interest would be better served by avoiding an unnecessary trial.
[6] The record does not reflect what precipitated this court appearance.
[7] See In re Camm, 294 So.2d 318 (Fla. 1974).