462 So.2d 1147 (1984)
Lynn YEM, Appellant,
v.
STATE of Florida, DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellee.
No. 83-2964.
District Court of Appeal of Florida, Third District.
September 25, 1984.
*1148 William A. Meadows, Jr. and Mark Hektner, South Miami, for appellant.
Jim Smith, Atty. Gen., and Kent A. Zaiser, Asst. Atty. Gen., for appellee.
Before HUBBART, NESBITT and BASKIN, JJ.
PER CURIAM.
The natural mother appeals a final judgment adjudicating her child dependent and permanently committing the child to the Florida Department of Health and Rehabilitative Services (HRS) for subsequent adoption. We affirm.
The child in question was born on March 13, 1980, while her mother was imprisoned at Broward Correctional Institute (BCI) for the murder of a stepson. After her birth, the child's father took the child and left her in her grandfather's care.[1] On November 13, 1982, the grandfather was found dead in his home and the child was found wandering the streets. She and the house where she had lived were filthy, and she had a severe case of diaper rash. The child was placed with HRS on that date. Although the child had previously visited her mother at BCI, HRS decided not to allow any more visits. HRS filed a petition for permanent commitment of the child on July 12, 1983, which was subsequently granted by the trial court. This appeal followed.
Permanent commitment is statutorily authorized when the court finds "that it is manifestly in the best interests of the child" and "that the parent has abandoned, abused, or neglected the child." § 39.41(1)(f), Fla. Stat. (1983). The applicable standard of proof is clear and convincing evidence. Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); Torres v. Van Eepoel, 98 So.2d 735 (Fla. 1957). In the present case, the trial court found that clear and convincing evidence established that permanent commitment was in the best interest of the child and that the child's parents had both abandoned and neglected her. Neglect is statutorily defined as follows:
"Neglect" occurs when a parent or other legal custodian, though financially *1149 able, deprives a child of, or allows a child to be deprived of, necessary food, clothing, shelter, or medical treatment or permits a child to live in an environment when such deprivation or environment causes the child's physical, mental, or emotional health to be significantly impaired or to be in danger of being significantly impaired.
§ 39.01(26), Fla. Stat. (1983).
The mother argues that HRS failed to adequately prove that she neglected the child because it failed to prove her financial ability to provide for the child or that she could have prevented the conditions of the child's environment. We find that the holding in Wright v. State, 409 So.2d 1183, 1184-85 (Fla. 4th DCA 1982) is particularly applicable in this case:
The purpose of the phrase "financially able" in subsection (2[6]) is to ensure that financially disadvantaged parents may not be divested of their children simply because they are poor. It does not, however, constitute a license for child abuse for either rich or poor. We need not draw that fine line which the circumstances of some future case will require of a court confronted with a deprivation of necessary food, clothing, shelter or medical treatment. The term "financially able" rather clearly applies in that situation and poverty, under appropriate circumstances, may be found to constitute a bar to a finding of dependency.
The present case does not stand or fall on such a determination. This minor child has been subjected to abuse by a custodian over some period of time without intervention by appellant, whom the record shows was fully cognizant of the situation. The "neglect" occurred when appellant permitted the "child to live in an environment (which) causes the child's physical, mental, or emotional health to be significantly impaired."
... .
The statute used the disjunctive "or". The term "financially able" modifies that provision which requires a showing of deprivation; it does not modify the provision which relates to environment. It was therefore not incumbent on the state to allege or prove that appellant was "financially able."
Likewise, in the present case, we hold that the record supports the trial court's finding that the mother, by her act of murdering her stepson resulting in extended incarceration, permitted her child to live in an environment which caused the child's physical, mental or emotional health to be significantly impaired or in danger of being significantly impaired.
Additionally, we note that the fact that the mother never had actual custody of her child does not foreclose a finding of neglect. See In re J.L.P., 416 So.2d 1250 (Fla. 4th DCA 1982). We do not hold that long-term incarceration for conviction of a crime in and of itself works an automatic forfeiture of parental rights. An imprisoned parent, however, is not relieved of all parental responsibilities because of the imprisonment. It is apparent from the record in the present case that the mother had relatives living in the area, other than the child's grandfather. There is no evidence, however, indicating she ever attempted to have these relatives undertake the care of the child or provide a decent environment for the child to live in. Thus, she has neglected her child by permitting the child to live in an environment condemned by the Florida Juvenile Justice Act. See § 39.01(26) and § 39.41(1)(f)1.a.
In rendering this decision we recognize that the natural right of a parent is not to be lightly regarded and that to deprive a parent permanently of his or her child is drastic action. Noeling v. State, 87 So.2d 593 (Fla. 1956). The overriding consideration, however, is the welfare of the child. Potvin v. Keller, 313 So.2d 703 (Fla. 1975); In re Camm, 294 So.2d 318 (Fla.), cert. denied, 419 U.S. 866, 95 S.Ct. 121, 42 L.Ed.2d 103 (1974); Padilla v. Catholic Service Bureau, Inc., 315 So.2d 485 (Fla. 3d DCA 1975). The supreme court has stated that courts:
should in every instance be guided by an effort to consider first and primarily the welfare of the child. While the rights of *1150 the parents must, of course, always be observed, nevertheless, these parental prerogatives are to be evaluated in the light of what appears to be the best interests of the juvenile.
Noeling, 87 So.2d at 596. There is no doubt in the present case that the best interest of the child would be served by permanent commitment and subsequent adoption.[2] The mother of the child does not even attempt to dispute this fact.[3]
Since the trial court properly found that permanent commitment was in the best interest of the child and that the mother had neglected her child, the judgment of permanent commitment was authorized. § 39.41(1)(f)1.a. We, therefore, find it unnecessary to determine whether the trial court also properly found abandonment. Accordingly, the judgment of permanent commitment is affirmed.
NOTES
[1] The father's only manifested interest in the child was to deliver her to the grandfather. Since the time the child was placed with HRS, the father has not initiated any contact, and has never requested to visit the child. He failed to contact his attorney or participate in the disposition hearing, although he had actual notice thereof. He is also not a party to this appeal. There is no dispute over the finding that the father has clearly neglected and abandoned the child.
[2] Two experts testified on this issue. One doctor who examined the mother testified that her judgment was significantly impaired and found her to be narcissistic and egocentric. He also opined that the mother was not highly treatable, and that if she were given custody of the child, the child's physical and emotional needs would be at risk. The other doctor testified that the mother had poor judgment and is unable to control anger. He opined that the mother could not provide for the child's physical and emotional needs in the long run, and that if the mother had custody of the child, the child's well being would be in jeopardy. He recommended that the child be released for permanent adoption.
[3] In fact, the mother essentially concedes the point on the last page of her brief when, while arguing that the evidence is insufficient to show neglect or abandonment, she states that "it may be preferable to order the permanent commitment of [the child] and to sever [the mother's] parental ties."