THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
CHARLES HARRISON, Defendant-Appellant.

Fourth District    No. 15721

Opinion filed March 20, 1980.

Richard J. Wilson and Karen Munoz, both of State Appellate Defender's Office, of Springfield, for appellant.

Ronald C. Dozier, State's Attorney, of Bloomington (Gary J. Anderson and Darryl Pratscher, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE WEBBER delivered the opinion of the court:

Defendant was charged with the offense of child abduction (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 10—5), and after a jury trial in the circuit court of McLean County was found guilty. He was sentenced to 30 months' probation, with the first 30 days to be served in the county jail, and was ordered to make restitution to his former wife in the sum of $2,020.20 (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—6—3(b)(9)). He appeals.

On appeal defendant raises two issues: (1) whether his conviction can stand in the face of a divorce decree which awarded joint custody of the

children concerned to his former wife and himself with physical custody in the former wife; and (2) whether the record supports the amount of restitution ordered.

Defendant and his former wife, Phoebe Harrison Quillen, were divorced in the circuit court of McLean County October 19, 1971. The portion of the decree which is pertinent here was read to the jury by the trial court as follows:

> "g. H and W are proper persons to have custody of their minor children, and they have agreed to joint custody, with actual, physical custody in W and with liberal, reasonable visitation rights in H, at reasonable time and places, after reasonable notice; and for the good of the children, they have agreed to fully cooperate with each other so that both will be considerate of the other and the children at all times."

On November 4, 1978, defendant, exercising his visitation rights, picked up his two minor daughters from the home of his former wife. He and his current wife, together with his children from his second marriage, packed their belongings into a bus, or van, and left for the State of Mississippi where they took up residence. The former wife, now Mrs. Quillen, made two unsuccessful trips to Mississippi in order to locate her children. Finally, on December 22, 1978, she found them and returned them to Bloomington.

Defendant's chief emphasis on appeal is that he could not be guilty of the offense in view of the joint custody arrangement recited in the divorce decree.

The statute reads: "A person commits child abduction when, with intent to violate a court order awarding custody of a child to another, he or she; (1) removes the child from Illinois without the consent of the person lawfully having custody of the child; * * *." Ill. Rev. Stat., 1978 Supp., ch. 38, par. 10—5(b)(1).

■■ Defendant argues that his rights of custody were equal to those of his former wife and that since she did not have sole custody of the children, there could be no violation of the statute. We disagree.

Custody is a form of guardianship, and joint custody merely reflects the law of Illinois as found in section 11—7 of the Probate Act of 1975 which reads in part: "The parents have equal powers, rights and duties concerning the minor." Ill. Rev. Stat. 1977, ch. 110½, par. 11—7.

It therefore follows that neither parent could remove the children without infringing on the powers, rights and duties of the other. The appellate court in *Ware v. Law* (1919), 214 Ill. App. 8, 14, speaking of coadministrators said: "We think, therefore, that there is merit in the contention that each in a sense bore the relationship of trustee towards the other."

Moreover, a reading of the plain language of the divorce decree indicates that joint custody was defined explicitly. Custody with regard to W was to be "actual, physical custody" and custody with regard to H was to be "liberal, reasonable visitation rights." Defendant cites us to an Alaskan case, *Delgado v. Fawcett* (Alas. 1973), 515 P.2d 710, in which visitation was defined as a form of custody. We agree with that aspect of the decision.

In our view, even assuming *arguendo* that there was some form of custody in defendant, there was also custody in another within the meaning of the statute. Under defendant's interpretation of the statute, children would become mere chattels to be disposed of according to "An Act to revise the law in relation to joint rights and obligations" (Ill. Rev. Stat. 1977, ch. 76, par. 2(a)), wherein a bank may pay over a deposit to any joint tenant without liability. We decline to comment further on any such repugnant concept.

The remedial purpose of the child abduction statute is so obvious as to need little exegesis on our part. The number of parents who in recent times have seen fit to seize their children who are in the custody of a divorced spouse, and spirit them off to another jurisdiction has increased dramatically. The legislature quite obviously felt that the civil penalties for such conduct were insufficient. It is noteworthy that certain affirmative defenses are provided by the statute (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 10—5(c)), but nowhere in that paragraph is joint custody mentioned. The statute is one of deterrence, its aim is to protect the welfare of the children who are the sad detritus of a divorce proceeding by attempting to establish, as best human ingenuity may do so, a stable environment for them. It also seeks to protect the rights of the custodial parent under the decree.

The record discloses that defendant took the children away in the nighttime without disclosing to them or to his former wife what his destination was. This fact likewise demonstrates that defendant knew he had no right to that sort of custody, and that he intended to violate the court order.

Defendant's second issue regarding the amount of restitution presents somewhat more merit. Section 5—6—3(b) (9) of the Unified Code of Corrections (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—6—3(b)(9)), permits the court in its discretion to require as part of an order of probation that the probationer: "(9) make restitution in an amount not to exceed actual out of pocket expenses or loss proximately caused by the conduct of the defendant."

At defendant's sentencing hearing the trial court had before it a memorandum detailing what defendant's former wife claimed as expenses and losses. It included telephone tolls, attorney retainer, travel

expenses for trips to Mississippi (mileage, car rental and motel), and wages lost by herself and her second husband. These items totaled $5,239.20. The trial court considered the matter and rejected more than one-half of the items. It allowed items as follows:

| | |
|---|---:|
| Phone calls: | |
| From Mississippi | $175 |
| From Bloomington | 194 |
| Attorney retainer | 350 |
| Travel expenses: | |
| Car rentals | 75 |
| Motel | 60 |
| Wages lost: | |
| Phoebe Quillen, 5 weeks at $5.83 per hour | 1,166 |
| | $2,020. |

Defendant objects that there is no documentary evidence to sustain these items. We have examined the record and we find the objection is well taken as to the wages lost, but not otherwise. In *People v. Tidwell* (1975), 33 Ill. App. 3d 232, 338 N.E.2d 113, the court sustained a restitution award based on the statements of the victim. It said that she was subject to cross-examination, and therefore documentation was not necessary. We concur with *Tidwell* insofar as the phone calls and the travel expenses are concerned.

However, we find the evidence inadequate and confusing as to the lost wages. Mrs. Quillen testified, but it is by no means clear, whether her absence from work was on account of the child-abduction problem or on account of her own health problems. Furthermore, there was no evidence as to whether work would have been available to her during the period involved, nor at what rate.

In addition, as concerns the attorney retainer, we know of no authority in the absence of statute which permits a court to assess attorney's fees. No such statute is present here and it was therefore error to include them. The order for the attorney's retainer is vacated.

The conviction and sentence of the defendant is affirmed; the order of restitution is affirmed concerning telephone tolls and travel expenses; the order of restitution concerning attorney's retainer is vacated in its entirety; the order of restitution concerning lost wages is vacated, and the cause is remanded to the circuit court of McLean County with directions to hold a further hearing on lost wages in conformity with the views expressed herein.

Affirmed in part, vacated in part, and remanded with directions.

CRAVEN and TRAPP, JJ., concur.