661 So.2d 346 (1995)
Hollice LAFLEUR, Appellant,
v.
The STATE of Florida, Appellee.
No. 94-1897.
District Court of Appeal of Florida, Third District.
October 5, 1995.
Certification Denied November 1, 1995.
*347 Bennett H. Brummer, Public Defender and Neil Rose, Special Assistant Public Defender, for appellant.
Robert A. Butterworth, Attorney General and Roberta G. Mandel, Assistant Attorney General, for appellee.
Before SCHWARTZ, C.J., and HUBBART and NESBITT, JJ.
SCHWARTZ, Chief Judge.
The defendant appeals from multiple convictions and sentences for violent crimes which occurred during an episode of armed hostage taking in the home of his estranged family. We affirm the convictions, but order the sentences revised in some respects and remand for resentencing.

I.
The incident in question began when Lafleur went to the home of his father and mother-in-law, Robert and Eunice Paris, where his wife Linda and year-old son, Hollice, Jr., were also staying. At the time, he was subject to a "domestic violence order" which precluded him from contact with Linda, gave her custody of the boy, and provided that his visitation rights were to be "agreed by the parties." In the course of a confrontation with Linda over the child, he accosted Eunice with a handgun and, after Linda and Eunice fled the home, took the blind Robert Paris and Hollice Jr. hostage. An eight-hour crisis followed. Eventually, after Lafleur had threatened to shoot his father-in-law and to kill both his wife and the baby if she did not go back to him, negotiations with the police SWAT team ended with his releasing Mr. Paris, and then, although he had said that the baby was his "ace in the hole," the child as well.
On this evidence, the jury convicted Lafleur of armed burglary of and making an armed assault in the Paris home (count 1) armed kidnapping with a firearm of Mr. Paris (count 2) and Hollice Jr. (count 3) and aggravated assault with a firearm on Robert Paris (count 4) and Eunice Paris (count 5). Because of his prior record, he was sentenced as a habitual violent felony offender to three consecutive life sentences on counts 1, 2, and 3 and to consecutive ten-year sentences on counts 4 and 5. The sentences as *348 to counts 1, 2, and 3 provided for consecutive fifteen-year minimum mandatory terms as a habitual violent offender and three-year concurrent minman terms for the use of a firearm; the sentences as to counts 4 and 5 contained five-year and three-year concurrent minimum mandatories on those respective grounds.

II.
Lafleur's only challenge to the convictions is to count 3 in which he was charged with the armed kidnapping of the child, Hollice Jr., by "forcibly, secretly, or by threat, confin[ing], abduct[ing] or imprison[ing him] against his [will] with the intent to hold [him] for ransom or reward or as a shield or hostage." Citing Johnson v. State, 637 So.2d 3 (Fla. 3d DCA 1994), review denied, 649 So.2d 235 (Fla. 1994), he claims, in essence, that one may never be guilty of kidnapping his own child. We disagree.
The kidnapping statute provides as follows:
787.01 Kidnapping; kidnapping of child under age 13, aggravating circumstances. 
(1)(a) The term "kidnapping" means forcibly, secretly, or by threat confining, abducting, or imprisoning another person against his will and without lawful authority, with intent to:
1. Hold for ransom or reward or as a shield or hostage.

2. Commit or facilitate commission of any felony.
3. Inflict bodily harm upon or to terrorize the victim or another person.
4. Interfere with the performance of any governmental or political function.
(b) Confinement of a child under the age of 13 is against his will within the meaning of this subsection if such confinement is without the consent of his parent or legal guardian.[e.s.]
§ 787.01(1), Fla. Stat. (1993). In Johnson, the natural father of a young child, upset that his girlfriend, the child's mother, had moved out of his house with the baby, forced them both to leave with him. This court, considering only that portion of the statute which precluded "confining ... another person against his will... ."  the words "abducting or imprisoning" were omitted from the court's quotation of the statute  as well as the definition of "confinement of a child" in subsection (b) as "without the consent of his parent," held that Johnson, an acknowledged "parent," could not be guilty of violating that aspect of the kidnapping statute with which he was charged. But Johnson is inapplicable to this case.
On its facts, and as it specifically says, Johnson reflects the principle that "[i]n [the] absence of a court order awarding custody, `[t]he general rule is that a parent cannot be found guilty of kidnapping or a similar crime for taking his child from the other parent... .'" Johnson, 637 So.2d at 4 [e.s.] (citing Annot., Kidnapping or Related Offense by Taking or Removing of Child by or Under Authority of Parent or One in Loco Parentis, 20 A.L.R.4th 823, 827 (1983)). In other words, under Johnson, one cannot be criminally liable simply for "confining" or taking possession of one's child  an act which, by statutory definition, the parent is privileged to commit. For two reasons, that rule does not govern this case.
(a) First, the defendant was not entitled to the "possession" of his son. Under a lawful and controlling order of court, Hollice Jr.'s custody had been granted solely to his mother, a status with which the defendant could not interfere without her agreement. It has been widely held that, in this circumstance, the non-custodial parent may be guilty of kidnapping. See People v. Harrison, 82 Ill. App.3d 530, 37 Ill.Dec. 820, 402 N.E.2d 822 (1980) (affirming father's conviction for child abduction despite award of "joint custody" because "actual, physical custody" was granted to mother and only visitation rights to father, who picked up children for visitation but took them to another state); see also People v. Hyatt, 18 Cal. App.3d 618, 96 Cal. Rptr. 156 (1971); Lee v. People, 53 Colo. 507, 127 P. 1023 (1912); Annot., Kidnapping or Related Offense by Taking or Removing of Child by or Under Authority of Parent or One in Loco Parentis, 20 A.L.R.4th 823, 827 (1983). We agree with these decisions.
(b) Furthermore, and perhaps more significantly, Johnson and cases like it do not *349 control when the parent does not simply exercise his rights to the child, but takes her for an ulterior and unlawful purpose which is specifically forbidden by the kidnapping statute itself. See People v. Senior, 3 Cal. App.4th 765, 5 Cal. Rptr.2d 14 (1992). Thus, Lafleur was lawfully convicted, as charged, of "abducting or imprisoning," § 787.01(1)(a), Fla. Stat. (1993), the child "with intent [to hold him] as a shield or hostage," § 787.01(1)(a)1, Fla. Stat. (1993). See Senior, 3 Cal. App.4th at 781, 5 Cal. Rptr.2d at 24 (defendant properly held guilty of kidnapping "when he took [his daughter] into a motel room in order to molest her"); State v. Viramontes, 163 Ariz. 334, 788 P.2d 67 (1990) (cited in Johnson; defendant properly convicted of kidnapping when he took his child to commit the separate felony of abandoning her, as precluded by the Arizona equivalent to § 787.01(1)(a)2.).

III.
We do find error in aspects of the sentences imposed below.
1. It is clear, and conceded, that habitual violent felony sentences were improperly imposed for the life felonies of armed burglary with a firearm and committing an assault, § 810.02(2)(a), Fla. Stat. (1993) (count 1), and armed kidnapping with a firearm, §§ 787.01, 775.087, Fla. Stat. (1993) (counts 2 and 3). Lamont v. State, 610 So.2d 435 (Fla. 1992). Hence, the sentences are vacated with directions to impose guidelines sentences on these charges  which may properly be imposed consecutively. § 775.021(4), Fla. Stat. (1993).[1]
2. As to the two habitual offender sentences which were appropriately imposed for aggravated assault as to counts 4 and 5, we conclude that the entire series of events constituted a single criminal episode. See Wilson v. State, 467 So.2d 996 (Fla. 1985); Parker v. State, 633 So.2d 72 (Fla. 1st DCA 1994); Dietrich v. State, 635 So.2d 148 (Fla. 2d DCA 1994). As a result, these sentences  and their five-year min-man terms  must be made concurrent. Hale v. State, 630 So.2d 521 (Fla. 1993), cert. denied, ___ U.S. ___, 115 S.Ct. 278, 130 L.Ed.2d 195 (1994).
3. For the same reason, the five minimum mandatory three-year terms imposed for the use of a firearm must also be rendered concurrent, both with each other, Palmer v. State, 438 So.2d 1 (Fla. 1983), and with the habitual offender ag. assault min-mans. Jackson v. State, 659 So.2d 1060 (Fla. 1995).[2]
4. Finally, the habitual offender sentences must be ordered to be served first. *350 Pioquinto v. State, 656 So.2d 552 (Fla. 2d DCA 1995).
To summarize, Lafleur shall be resentenced to two concurrent ten-year habitual offender sentences for aggravated assault  subject to two concurrent five-year min-man and five concurrent three-year min-man provisions; that is, practically speaking, a single five-year minimum mandatory term  followed by three consecutive guidelines life felony sentences.
Affirmed in part, vacated in part and remanded for resentencing.
NOTES
[1] It is ironic that, because of the application of the Lamont anomaly that life felonies do not qualify for habitual offender sentencing, the guidelines sentences for counts 1, 2, and 3 are not subject to the Hale anomaly that habitual offender sentences arising from one transaction may not run consecutively. See Hale v. State, 630 So.2d 521 (Fla. 1993), cert. denied, ___ U.S. ___, 115 S.Ct. 278, 130 L.Ed.2d 195 (1994). The result is that Lafleur faces a much longer term of consecutive time by not being a habitual offender as to the most serious crimes he committed.

We note also that, effective October 1, 1995, the legislature has overruled Lamont by providing that life felonies are subject to habitual offender sentencing. 1995 Fla. Sess. Law Serv. ch. 95-182, § 2 (West) (amending § 775.084(4)(a)(1). Whether Hale will also fall in the present context depends on the Supreme Court's answer to the question we certified in such cases as Parker v. State, 651 So.2d 140 (Fla. 3d DCA 1995), review granted, (Fla.Case no. 85,548, filed September 1, 1995, 20 FLW # 36, page i, ___ So.2d ___.) and Hill v. State, 645 So.2d 90 (Fla. 3d DCA 1994). (Because of the relative insignificance of the two, now-required-to-be-concurrent aggravated assault habitual offender sentences which will be followed by three consecutive sentences for life felonies, see Robertson v. State, ___ So.2d ___ (Fla. 3d DCA Case no. 95-2099, opinion filed, September 13, 1995) [20 FLW 2093], we do not believe it necessary to certify that question in this case.)
[2] An argument can be made for making at least the three concurrent firearm three-year min-mans applicable to the life felonies consecutive to the five year term on counts 4 and 5  for a total of eight-years min-man  on the ground that, unlike Jackson, they will not be concurrent with habitual offender minimum mandatories on those counts. Because, however, they are required by Palmer to be concurrent with the aggravated assault firearm minimums, and these, in turn, are required by the exact holding of Jackson to be concurrent with the ones imposed under the habitual offender law on counts 4 and 5, we think, particularly in the light of the thrust of Jackson against consecutive minimums, that Jackson applies to the present situation.