LABARGA, J.
This case is before the Court for review of the decision of the Third District Court of Appeal in Davila v. State, 26 So.3d 5 (Fla. 3d DCA 2009). The district court certified that its decision is in direct conflict with the decision of the Second District Court of Appeal in Muniz v. State, 764 So.2d 729 (Fla. 2d DCA 2000). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const.
The case under review concerns Petitioner Ricardo Davila (“Davila”), who was convicted of several crimes, including the *193 kidnapping of his eleven-year-old son, which occurred between February 2000 and July 2000. The conflict issue before us centers on whether a parent can lawfully be convicted of kidnapping his own child under section 787.01, Florida Statutes (2000). For the reasons expressed below, we approve the decision of the Third District in Davila to the extent that it held that a parent can be criminally liable for kidnapping his own child pursuant to section 787.01 under certain circumstances, but disapprove the reasoning and analysis of the district court. We also disapprove the decision of the Second District in Muniz. We begin our discussion with an overview of the facts and procedural history.
FACTS AND PROCEDURAL HISTORY
Davila was charged by amended information with thirty-six counts of aggravated child abuse, three counts of false imprisonment of a child under the age of thirteen, one count of child neglect, one count of child abuse, one count of attempted felony murder, and three counts of kidnapping a child under the age of thirteen. With specific regard to the kidnapping charges, the State alleged that on or between February 5, 2000, and July 7, 2000, Ricardo Davila did “forcibly, secretly, or by threat, confine, abduct, or imprison another person under thirteen (13) years of age, to wit: R.D. (A MINOR), against that person’s will, with the intent to inflict bodily harm upon or to terrorize the victim or any other person, and in the course of committing said offense, the defendant committed aggravated child abuse, as defined in s. 827.03, in violation of s. 787.01(3)(a) and s. 777.011 Florida Statutes.”
Davila and his wife, Josefa Davila, were both tried before a jury for various criminal offenses against their son, R.D. The evidence presented at trial demonstrated that R.D. arrived from Nicaragua on February 5, 2000, and thereafter resided with his parents and two siblings in Sweetwa-ter, Florida. Shortly after his arrival from Nicaragua, R.D. was struck by his parents several times for misbehaving and lying. Additionally, R.D. testified that his parents placed him in the storage room of their home for approximately two weeks and that, while he was free to roam about the room, he was not allowed out of the room during the two-week period.
R.D. also testified that he had been placed in one of the bathrooms of his parents’ home on two separate occasions— once in May for a period of three weeks and once in July for about one week. One of those occasions occurred after his mother complained that R.D. had not washed the dishes well and instructed Davila to lock R.D. in the bathroom, which he did. Davila then blindfolded R.D. with handkerchiefs, tied his hands and feet with rope, placed a bucket over his head and a handkerchief in his mouth, and locked the bathroom door.
According to R.D., his father also hit him on his back, hands, and legs with a broomstick after discovering that R.D. managed to free himself from the rope, and kicked him once while R.D. was in the bathroom because he had removed the handkerchiefs from around his eyes. As a result of his father’s kick, R.D. hit a bathroom wall and broke a tile. R.D. testified that he was required to lie down in the bathtub during his time in the bathroom, and if he did not do so, his father would hit him. R.D. eventually managed to escape from the bathroom and flee to a neighbor’s home sometime in July 2000.
Davila’s testimony conflicted to some extent with R.D.’s testimony as to the length of time and condition in which R.D. was *194 kept in the bathroom. Davila testified that the first time he put R.D. in the bathroom he only placed a bucket over his head and left R.D. in the bathroom for one day, releasing him at night. He further testified that he had placed his son in the bathroom one other time for about four or five hours because R.D. had lied and hit both of his parents. Davila denied that his son had been tied up for more than twenty-four hours, and then explained that he had not really tied up his son when R.D. was placed in the bathroom, but rather that he had “rolled” R.D.’s hands a certain way.
The jury convicted Davila of twenty-nine counts of aggravated child abuse, one count of child neglect, one count of child abuse, and three counts of kidnapping.[1] Subsequently, Davila was sentenced to thirty years in prison for the convictions of aggravated child abuse, five years in prison for the convictions of child abuse and child neglect, and life imprisonment for the convictions of kidnapping. The trial court ordered 198 days’ credit for time served, and further ordered that the sentences run concurrently. Davila appealed his convictions to the Third District, which affirmed in Davila v. State, 829 So.2d 995, 996 (Fla. 3d DCA 2002).
Davila then filed a motion for postcon-viction relief pursuant to Florida Rule of Criminal Procedure 3.850. The trial court denied all of the claims and an appeal to the Third District followed. See Davila, 26 So.3d at 6-8. On appeal, Davila argued that the three counts of kidnapping should be vacated because a parent cannot be convicted of kidnapping his own child as a matter of law. Id. at 7.[2] The Third District noted that Davila was the father of the victim and that there was no court order which deprived him of custody rights. Id. The district court observed that, as a general rule, a parent cannot be convicted of kidnapping his or her own child. Id. at 7 (citing Johnson v. State, 637 So.2d 3, 4 (Fla. 3d DCA 1994)). The court then noted: “We have recognized an exception, however, to the general rule where the parent ‘does not simply exercise his rights to the child, but takes [the child] for an ulterior and unlawful purpose which is specifically forbidden by the kidnapping statute itself.’” Id. (quoting Lafleur v. State, 661 So.2d 346, 349 (Fla. 3d DCA 1995)). The Third District thus denied Davila relief on his claim that a parent cannot be convicted of kidnapping his own child. The district court then certified *195 conflict with the Second District’s decision in Muniz, noting that if the case were before the Second District, Davila would be entitled to relief on the kidnapping issue. Davila, 26 So.3d at 7. We turn now to the Second District’s decision in the conflict case.
In Muniz, the Second District reversed the defendant’s conviction for kidnapping, holding that absent a court order depriving him of authority over his child, Muniz could not be convicted of kidnapping his own child. See Muniz, 764 So.2d at 729 (citing Johnson, 637 So.2d at 4). Muniz had argued with and battered the mother of his nonmarital five-week-old son, after which the mother fled the home, leaving the baby behind. Id. at 729-30. The police were called and when they arrived, they escorted the mother back to the home and knocked on the door. Id. at 730. Although Muniz did not respond to the officers’ knock on the door, the child’s mother opened the door and the officers went inside. The officers confronted Muniz as he held his child in his arms and demanded that Muniz hand over the baby, but he refused. Id. When an officer approached him, Muniz picked up a razor and threatened both the baby and himself with the razor. After spending hours trying to persuade Muniz to release the child to them, the police seized Muniz and safely removed the baby. Id.
Muniz subsequently was charged with domestic violence battery and armed kidnapping, and a jury trial was held. Id. Muniz moved for a judgment of acquittal at the conclusion of trial, asserting that he could not be convicted of kidnapping his own child. The trial court denied the motion, reasoning that the mother was the sole natural guardian of the nonmarital child pursuant to section 744.301(1), Florida Statutes (1997). Id. (citing § 744.301(1), Fla. Stat. (1997) (“The mother of a child born out of wedlock is the natural guardian of the child and is entitled to primary residential care and custody of the child unless a court of competent jurisdiction enters an order stating otherwise.”)). On appeal, the Second District concluded that even if the mother was the child’s guardian, Muniz was the legal father of the child and, thus, a parent of the alleged victim. Id. at 729-30. The district court held that “[t]he kidnaping statute does not criminalize the confinement of a child under the age of thirteen by ‘a parent or a legal guardian.’ ” Id. at 729 (quoting § 787.01(l)(b), Fla. Stat. (1997)). The court ruled that while the defendant’s conduct was inappropriate, “section 787.01(l)(b) prevents prosecution of Mr. Muniz for the first-degree felony offense of kidnaping his own child.” Id. at 731.
ANALYSIS
The conflict issue in this case centers on whether section 787.01, Florida Statutes (2000), provides a basis to convict a parent of kidnapping his or her own child as the term “kidnapping” is defined in the statute. This question turns in large part on the legal effect of subsection (l)(b) of that statute. “The interpretation of a statute is a purely legal matter and therefore subject to the de novo standard of review.” Kasischke v. State, 991 So.2d 803, 807 (Fla.2008) (quoting Kephart v. Hadi, 932 So.2d 1086, 1089 (Fla.2006)). “A court’s purpose in construing a statute is to give effect to legislative intent, which is the polestar that guides the court in statutory construction.” Larimore v. State, 2 So.3d 101, 106 (Fla.2008) (citing Bautista v. State, 863 So.2d 1180, 1185 (Fla.2003)). We look primarily to the actual language used in the statute to discern legislative intent. See id. “[W]hen the language of the statute is clear and unambiguous and conveys a clear and definite meaning ... the statute must be given its plain and obvious meaning.” *196 Velez v. Miami-Dade Cnty. Police Dep’t, 934 So.2d 1162, 1164 (Fla.2006) (quoting Fla. Dep’t of Revenue v. New Sea Escape Cruises, Ltd., 894 So.2d 954, 960 (Fla.2005)). “Further, we are ‘without power to construe an unambiguous statute in a way which would extend, modify, or limit, its express terms or its reasonable and obvious implications.’ ” Id. at 1164-65 (quoting McLaughlin v. State, 721 So.2d 1170, 1172 (Fla.1998)). We thus begin our analysis with the language of section 787.01, Florida Statutes (2000).
The criminal offense of kidnapping, which is codified in section 787.01, Florida Statutes (2000), is defined in relevant part as follows:
(l)(a) The term “kidnapping” means forcibly, secretly, or by threat confining, abducting, or imprisoning another person against her or his will and without lawful authority, with intent to:
1. Hold for ransom or reward or as a shield or hostage.
2. Commit or facilitate commission of any felony.
3. Inflict bodily harm upon or to terrorize the victim or another person.
4. Interfere with the performance of any governmental or political function.
§ 787.01(l)(a), Fla. Stat. (2000). Subsection (l)(b) further provides: “Confinement of a child under the age of 13 is against her or his will within the meaning of this subsection if such confinement is without the consent of her or his parent or legal guardian.” § 787.01(l)(b), Fla. Stat. In this case, the jury was instructed in relevant part that to convict Davila of kidnapping a child under the age of thirteen, the State had to prove that the defendant “forcibly or by threat confined or imprisoned R.D. against his will ... with intent to inflict bodily harm upon or terrorize R.D.” Davila contends that under section 787.01(l)(b), a parent of a child under the age of thirteen cannot be criminally liable for kidnapping that child where there was no court order depriving the parent of custody and where the alleged confinement of the child was with that parent’s consent. We disagree.
The plain language of section 787.01(l)(a) requires the State to prove an overt act on the part of the defendant; namely, a forceful, secretive, or threatening act that confines, abducts, or imprisons another person against his will. Further, to prove the offense of kidnapping, it must be established that the defendant performed the overt act with one of the four specific intents delineated under subsection (l)(a) of the kidnapping statute. The plain language of subsection (l)(b) of the statute sets forth a method of proof which allows the State to establish that the overt act on the part of the defendant was against a person’s will when that person is a child under the age of thirteen.
The unambiguous language of section 787.01, Florida Statutes (2000), does not exempt a parent from criminal liability for kidnapping his or her own child. Thus, by its own terms, section 787.01 permits Davi-la to be legally convicted of kidnapping R.D.[3] It is our view that if the Legislature intended to exempt a parent from criminal liability for kidnapping his or her own child, it would have expressly stated so. We trust that if the Legislature did not intend the result mandated by the plain and unambiguous language of section 787.01, the Legislature itself will amend *197 the statute. Until such time, we hold that a parent is not exempt from criminal liability for kidnapping his or her own child under section 787.01, Florida Statutes (2000).
Having resolved the conflict issue presented before us, we decline to address the parties’ remaining assertions.
CONCLUSION
Based on the foregoing, we conclude that the plain language of section 787.01, Florida Statutes (2000), does not preclude a parent from being held criminally liable for kidnapping his or her own child. We therefore approve the result reached by the Third District of Appeal in Davila v. State, 26 So.3d 5 (Fla. 3d DCA 2009), and disapprove the decision of the Second District Court of Appeal in Muniz v. State, 764 So.2d 729 (Fla. 2d DCA 2000).
It is so ordered.
LEWIS, QUINCE, POLSTON, and PERRY, JJ., concur.
PARIENTE, J., concurs with an opinion.
CANADY, C.J., dissents with an opinion.

. The trial court entered a judgment of acquittal on the counts for false imprisonment of a child under the age of thirteen, and the jury was instructed that false imprisonment of a child under the age of thirteen constituted a lesser included offense of the kidnapping offenses.

. In his postconviction appeal to the district court, Davila argued alternatively that it was improper to convict him of aggravated child abuse and then use the same acts of aggravated child abuse to enhance the kidnapping charge from a first-degree felony punishable by life imprisonment to a life felony. Davila, 26 So.3d at 7. The district court concluded that the postconviction record before it did not conclusively refute this claim, and consequently reversed this part of the trial court’s order and remanded for further proceedings. Id. Davila also raised on appeal a double jeopardy violation involving the counts for kidnapping and false imprisonment. The district court remanded this issue because the trial court had not addressed this claim. Id. at 7-8. Further, the district court remanded the case for an evidentiary hearing on the issue of whether trial counsel conceded Davi-la’s guilt on multiple counts at trial without the defendant’s consent. Id. at 8. Lastly, the Third District rejected Davila's contention that it was a double jeopardy violation to charge the defendant with multiple acts of aggravated child abuse occurring during a six-month period. Id. Davila does not raise any of these claims before this Court.

. Our holding today does not suggest that a parent may never discipline his or her own child. However, under our holding, section 787.01 does not exempt a parent from criminal liability for committing a forceful, secretive, or threatening act that confines, abducts, or imprisons a child when such an overt act is committed with one of the four specific intents delineated under subsection (l)(a) of the kidnapping statute.