400 So.2d 1268 (1981)
Barbara DELANCY, Appellant,
v.
William BOOTH, in His Capacity As Superintendent of Florida Correctional Institute at Lowell, Florida, Appellee.
No. 80-1247.
District Court of Appeal of Florida, Fifth District.
June 24, 1981.
Rehearing Denied July 16, 1981.
Steven L. Seliger, Quincy, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Shirley A. Walker, Asst. Atty. Gen., Tallahassee, for appellee.
COBB, Judge.
The appellant Barbara Delancy, whose legal name is Barbara Milton, has been imprisoned since 1977. While incarcerated, she conceived a child and it was born to her on August 17, 1980 at a private hospital while she was serving her sentence at the *1269 Florida Correctional Institution at Lowell, Florida. After the child's birth, Delancy was returned to the institution, while the child remained at the hospital. Delancy is scheduled for parole in October 1982.
The appellant Delancy filed a petition for custody of the child and a motion for temporary injunctive relief in which she sought immediate custody pending a court determination of the child's best interests. In support of the motion for temporary injunctive relief, Delancy filed an affidavit of a doctor who stated that bonding between an infant and its mother is important and an affidavit of Mary Lou Milton, the appellant's mother, who stated that it would be a hardship for her as the grandmother, to take care of the child, but that she would do so if if were not allowed to be left with the appellant. In opposition to the motion for temporary injunctive relief, the state filed an affidavit of a doctor who stated that bonding occurs from the moment of birth until about four to five days later; that the event is more important to the mother than to the infant; that the time for bonding is past; and that the infant needed to be placed in a better environment. The trial court denied the motion for temporary injunctive relief and placed the child in temporary foster care with the Department of Health and Rehabilitative Services. The appellant then moved for rehearing on the ground that the trial court did not have the authority to commit the child to the care of the department without a finding of dependency. Upon rehearing, the trial court found that the child had been legally abandoned and neglected and was therefore dependent within the meaning of Chapter 39, Florida Statutes, and should be committed to HRS.
The trial court then heard testimony on the issue of whether the child should be placed under the authority of section 944.24, Florida Statutes (1979), with the appellant, the appellant's mother, or a foster home. At the hearing, Barbara Delancy testified that she had always wanted to keep the child. Prior to being incarcerated she and her illegitimate children had lived with her mother in Miami. She had worked while her mother kept the children. This would be the same situation upon her release. The other children were aged eleven, ten, and eight. She had used heroin up until the year 1973, and during the time that she had the three illegitimate children. It was her testimony that she wanted the child to be placed with her mother, if it could not be with her in prison.
Elizabeth McMahan, Ph.D. in clinical psychology, testified that bonding between a child and the primary care-giver is very important to the child's emotional needs and that transferring that bonding increases problems for the child. It was her opinion that the prison environment would not make any difference to the child, as long as the child was being well cared for. It was also her opinion that the best interests of the child would be served by placing it with the mother.
William Booth, Superintendent of Florida Correctional Institution at Lowell, testified that he had designated a portion of the clinical area as a nursery and that at this point he could house four mothers and four babies. He had purchased or received some toys as donations. However, stimulation for the babies at this point was limited to personal contact with the mother and medical staff and watching the mobiles float in the air. The children were allowed to go outside into the fresh air twice a day due to security problems. He testified that ill inmates in the clinic are not supposed to enter the nursery area, but their access is difficult to control because of the staff limitations.
Following the testimony, the trial court found that it would not be in the best interests of the child to allow it to remain in the prison environment, and that the child should be placed with its grandmother and its brothers and sisters. An order was entered to that effect, and it is this order that the appellant brings to this court.
Section 944.24, Florida Statutes (1979), provides:
(1) All regularly employed assistants, officers and employees whose duties *1270 bring them into contact with the inmates of the institution shall be women as far as practicable.
(2) If any woman received by or committed to said institution shall give birth to a child while an inmate of said institution, such child and its welfare shall be within the jurisdiction of the appropriate circuit court if the mother chooses to keep the infant. Upon petition by the Department of Corrections, the mother, or another interested party, a temporary custody hearing before the circuit court judge without a jury shall be held as soon as possible to determine the best interests of the child. The department shall provide and maintain facilities or parts of facilities, within the existing facilities, suitable to ensure the safety and welfare of such mothers and children, to be used at the discretion of the court.
(3) Any woman inmate who gives birth to a child during her term of imprisonment may be temporarily taken to a hospital outside the prison for the purpose of childbirth, and a charge for hospital and medical care shall be charged against the funds allocated to the institution. The Department shall provide for the care of any children so born and shall pay for their care until suitably placed.
In this case, the trial court was faced with the decision, pursuant to provisions of the above statute, to either place a newborn infant in prison with its mother or to place it with its maternal grandmother and three siblings outside the prison. The paramount consideration in such a custody determination, of course, is the best interest of the child, not the qualified "right" of the parent. In re Interest of Camm, 294 So.2d 318 (Fla. 1974). The trial court in this case heard testimony that clearly sustained its discretionary decision to place the infant with the grandmother, who would be taking care of it upon the mother's release from custody in any event. The trial court specifically relied upon the love of the grandmother, the companionship of the infant's siblings, and the consistency of care in the private home. This was not an abuse of the discretionary power of the court. Dinkel v. Dinkel, 322 So.2d 22 (Fla. 1975); Johnston v. Boram, 386 So.2d 1230 (Fla. 5th DCA 1980).
The appellant's argument concerning the trial court's finding of dependency is moot in this case. See Evans v. Evans, 383 So.2d 649 (Fla. 5th DCA 1980) (concurring opinion by Judge Orfinger).
The appellant has no constitutional or statutory right to raise the child in prison. Lawful incarceration limits many privileges and rights, a "retraction justified by the considerations underlying our penal system." Pell v. Procunier, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495, 501 (1974).
Accordingly, the determination of the trial court is AFFIRMED.
SHARP and COWART, JJ., concur.