# Third District Court of Appeal

## State of Florida

Opinion filed February 24, 2023.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D23-279
Lower Tribunal No. F22-13471
_____

**Unborn Child, etc.,**
Petitioner,

vs.

**Director James Reyes, et al.,**
Respondents.

A Case of Original Jurisdiction – Habeas Corpus.

William M. Norris, P.A., and William M. Norris, for petitioner.

Ashley Moody, Attorney General, and Kseniya Smychkouskaya, Assistant Attorney General, for respondent The State of Florida; Geraldine Bonzon-Keenan, Miami-Dade County Attorney, and Benjamin D. Simon, Assistant County Attorney, for respondent James Reyes.

Before LOGUE, GORDO, and LOBREE, JJ.

LOGUE, J.

A petition for habeas corpus has been filed avowedly by an unborn child challenging the unborn child's incarceration due to its mother being held in jail as she awaits trial for allegedly murdering a third party. Among other things, the petition seeks a writ "ordering UNBORN CHILD's release from custody." The petition also challenges the adequacy of the medical care being provided the pregnant mother. The Respondent, the director of the Miami-Dade County Corrections Department, disputes these allegations, even contending the mother has refused some prenatal care.

Because the petition is filed without a record to establish a factual basis and because consideration of this petition will be factually intensive, we follow Supreme Court precedent and exercise our discretion to dismiss the petition without prejudice to a remedy being pursued in a circuit court. Harvard v. Singletary, 733 So. 2d 1020, 1022 (Fla. 1999) ("In the past, this Court has declined to exercise its jurisdiction over extraordinary writ petitions raising substantial issues of fact and has dismissed without prejudice or transferred such cases to the appropriate circuit court.").

In doing so, as we have done in the past, we express no opinion on whether such filing is being brought by a party with standing, whether the claims are legally cognizable, whether they have merit, or what remedies, if any, are available. Lola v. Monroe Cnty. Sheriff's Off., 353 So. 3d 53 (Fla. 3d

2

DCA 2022). Among other things, we do not believe we can properly resolve whether the unborn child has the standing to file the petition before us given the inadequate record in this matter. Solares v. City of Miami, 166 So. 3d 887, 888 (Fla. 3d DCA 2015) ("For a court of law operating as one of the three branches of government under the doctrine of the separation of powers, standing is a threshold issue which must be resolved before reaching the merits of a case. Before a court can consider whether an action is illegal, the court must be presented with a justiciable case or controversy between parties who have standing."). Recognizing the restraint imposed by the doctrine of separation of powers and by our role as appellate judges, we decline to address these matters in a factual vacuum.

Dismissed.

LOBREE, J., concurs.

GORDO, J., concurring in part and dissenting in part.

This is a petition filed on behalf of an eight-month-old unborn child by its incarcerated mother as "next friend.[1]" I agree with the majority's decision to dismiss Petitioners' second claim regarding not receiving medically necessary prenatal care and treatment as the Circuit Court is better equipped to make these findings of fact.[2] I would, however, deny the claim of unlawful

---

[1] United States and Florida law clearly establish that a parent or guardian can bring an action on behalf of an unborn child. See State ex rel. Deeb v. Fabisinski, 152 So. 207, 209 (Fla. 1933) ("The application for the writ [of habeas corpus] may be made by an agent or friend, wife, husband, or the person detained himself, **or by parent for his child**, guardian for his ward, or special bail for his principal. In any event, it must be by a friendly person in the interest of the person illegally detained.") (emphasis added). Notably, the Miami-Dade County Department of Corrections—one of the most experienced in dealing with habeas petitions in the country—filed a lengthy response in this case and did not challenge Petitioners' standing. Neither did the Attorney General.

[2] While both Respondents are correct that claims regarding medically necessary care and treatment to an incarcerated person are not typically cognizable in a habeas corpus proceeding, based on the exigent circumstances involving a quickened unborn child—where the Petitioner filed its claim without an appendix and the parties offer such conflicting facts regarding medical treatment—I agree it is appropriate to exercise our discretion to dismiss the claim without prejudice to be pursued in Circuit Court. See Harvard v. Singletary, 733 So. 2d 1020, 1022 (Fla. 1999); Fernandez v. United States, 941 F.2d 1488, 1494 (11th Cir. 1991) ("Furthermore, '[t]he appropriate Eleventh Circuit relief from prison conditions that violate the Eighth Amendment . . . is to require the discontinuance of any improper practices, or to require correction of any condition causing cruel and unusual punishment.' Release from

4

incarceration by the government and find habeas corpus does not lie under these limited and specific circumstances.[3]

"The writ of habeas corpus is a common-law writ of ancient origin designed as a speedy method of affording a judicial inquiry into the cause of any alleged unlawful custody of an individual or any alleged unlawful, actual deprivation of personal liberty." Porter v. Porter, 53 So. 546, 547 (Fla. 1910). The writ is meant to prevent the unlawful detainment of persons **by the government**. See Allison v. Baker, 11 So. 2d 578, 579 (Fla. 1943) ("[The writ of habeas corpus] is a writ of inquiry and is issued to test the reasons or

---

confinement is not a possible remedy.") (internal citation omitted); United States v. Sisneros, 599 F.2d 946, 947 (10th Cir. 1979) (dismissing a medical mistreatment claim without prejudice as this type of claim was "not cognizable in a federal habeas corpus proceeding").

[3] To be clear, the Petitioners and Respondents agree to all facts necessary to adjudicate this claim: (1) the petition was filed by and through the "next-friend" and natural guardian (the incarcerated mother) on behalf of the unborn child; (2), the child is approximately eight months old in utero and the mother is currently detained and charged with murder; and (3) the unborn child has not been charged with a crime. The issue squarely before this Court is whether an incarcerated pregnant mother may raise a claim on behalf of her unborn child asserting the child is unlawfully detained by the government where the child has not been personally charged with a crime. To send this part of the petition back for a determination of facts which are undisputed seems odd. While the majority justifies this in the name of judicial restraint, I see a significant difference between exercising judicial restraint and punting a legal issue placed squarely before the Court. To decline to rule or say what the law is when an issue is ripe and will soon be moot, precludes meaningful review of the issues presented.

grounds of restraint and detention. The writ is venerated by all free and liberty loving people and recognized as a fundamental guaranty and protection of their right of liberty."); Boumediene v. Bush, 553 U.S. 723, 765 (2008) (noting that "the writ of habeas corpus is itself an indispensable mechanism for monitoring the separation of powers"); Wingo v. Wedding, 418 U.S. 461, 468 (1974) (stating that the root principle of a writ of habeas corpus "is that in a civilized society, **government** must always be accountable to the judiciary for a man's imprisonment: if the imprisonment cannot be shown to conform with the fundamental requirements of law, the individual is entitled to his immediate release") (quoting Fay v. Noia, 372 U.S. 391, 402 (1963)) (emphasis added); Boumediene, 553 U.S. at 808 (Roberts, J. dissenting) (stating "the central purpose of habeas corpus is to test the legality of **executive detention**") (emphasis added); Seccia v. Wainwright, 487 So. 2d 1156, 1157 (Fla. 1st DCA 1986) ("[T]he general rule is any person detained in custody, whether charged with a criminal offense or not, may prosecute a writ of habeas corpus to inquire into the cause of his imprisonment or restraint.").

Petitioners correctly argue that the Florida Legislature has expressed a clear intent to afford certain protections to unborn children. "[T]he Legislature has expressed a clear intent to recognize an unborn quick child

6

as a human being entitled to the protection of Florida's homicide statute [section 782.04(2), Florida Statutes]." Wyche v. State, 232 So. 3d 1117, 1120 (Fla. 1st DCA 2017). The Legislature further recognized this by establishing that the willful killing of an unborn child by injury to its mother is murder and is considered a separate offense from the death or bodily injury of the mother. See § 782.09(1), Fla. Stat.; § 775.021(5), Fla. Stat. ("Whoever commits an act that violates a provision of this code or commits a criminal offense defined by another statute and thereby causes the death of, or bodily injury to, an unborn child commits a separate offense if the provision or statute does not otherwise specifically provide a separate offense for such death or injury to an unborn child.").

Under Florida's Trust and Estate law, the Legislature has provided that an unborn child is entitled to representation. See § 731.303(4), Fla. Stat. ("If the court determines that representation of the interest would otherwise be inadequate, the court may, at any time, appoint a guardian ad litem to represent the interests of an incapacitated person, **an unborn or unascertained person**, a minor or any other person otherwise under a legal disability, or a person whose identity or address is unknown.") (emphasis added); § 736.0304, Fla. Stat. ("Unless otherwise represented, a minor, incapacitated, **or unborn individual**, or a person whose identity or location

7

is unknown and not reasonably ascertainable, may be represented by and bound by another person having a substantially identical interest with respect to the particular question or dispute, but only to the extent there is no conflict of interest between the representative and the person represented.") (emphasis added). An unborn child may also recover damages under the Wrongful Death Act for a parent killed shortly before the child's birth. See McNamara v. Seibert, 537 So. 2d 1009, 1010 (Fla. 5th DCA 1989), rev'd on other grounds 566 So. 2d 767 (Fla. 1990) ("[The unborn child] was an insured within the meaning of the policy, and has uninsured/underinsured motorist coverage as a 'survivor' for the wrongful death of her father caused by the wrongful acts of the underinsured motorist.").

Importantly, however, Florida law also recognizes that a mother's lawful incarceration may result in an unborn child—in utero—being in a correctional facility. Section 951.175(4), Florida Statutes, states:

> An inmate who is pregnant shall be provided with prenatal care and medical treatment for the duration of her pregnancy. The county shall ensure that a pregnant inmate receives supplemental food and clothing and is excused from inappropriate work assignments. An inmate shall be transferred to a hospital outside the detention facility grounds if a condition develops which is beyond the scope and capabilities of the county detention center's medical facilities.

8

§ 951.175(4), Fla. Stat.   The Legislature has provided for prenatal care and medical treatment for pregnant incarcerated inmates, a sure sign it clearly understood that an unborn child may find itself within a correctional facility as a function of its mother, a pregnant inmate, being properly incarcerated.

It is also evident that this child has not been unlawfully detained by the government.   The unborn child currently exists within its mother, who is lawfully detained at this time[4] because she is charged with second degree murder—an offense punishable by life imprisonment.   See Thourtman v. Junior, 338 So. 3d 207, 208 (Fla. 2022) ("Article I, section 14 of the Florida Constitution guarantees every person charged with a crime the right to pretrial release on reasonable conditions, such as bail, with two exceptions: the 'capital punishment or life imprisonment' exception set forth in the first sentence of article I, section 14 and the 'pretrial detention' exception, set forth in the second sentence of article I, section 14. Article I, section 14.").

The writ of habeas corpus is meant to prevent the unlawful detainment of persons **due to government action**.   While Petitioners' counsel frames

---

[4] The mother was arrested on July 26, 2022, and was approximately six weeks pregnant on that date.  While she was entitled to an Arthur hearing to request a reasonable bond despite being charged with a dangerous offense, the record below reflects she did not request one until January 25, 2023. See State v. Arthur, 390 So. 2d 717, 720 (Fla. 1980).  Her Arthur hearing is now set for March 7, 2023.

9

his argument that the mother's incarceration and the unborn child's detention is a distinction without a difference—in other words—the lawful detention of the mother is creating an unlawful detention of the unborn child in utero, his position is untenable.  No more could the government be accused of unlawfully detaining the unborn child in this case than could the mother be guilty of kidnapping[5] over interstate lines if she chose to visit her grandmother in Georgia while eight months pregnant.  The argument is illogical.  The mother comes to us as a badly disguised Trojan Horse.  In fact, the argument is nothing more than an attempt for the mother to leverage her unborn child as a basis to be released from lawful detention.

Here, Petitioners' counsel does not question that upon the child's birth the child will be released from the hospital and correctional facility into the custody of either the Department of Children and Families or an approved adult family member.  See § 951.175(5), Fla. Stat. ("Any woman inmate who gives birth to a child during her term of imprisonment may be temporarily

---

[5] It should be noted that Florida law only allows a custodial parent to be charged with kidnapping under certain specific enumerated circumstances.  See Davila v. State, 75 So. 3d 192, 196 (Fla. 2011); see also § 787.01, Fla. Stat.; but see Johnson v. State, 637 So. 2d 3, 3–4 (Fla. 3d DCA 1994) (holding as a general rule a parent cannot be convicted of kidnapping their own child).  Because, however, Petitioners' counsel argues the unborn child is being detained unlawfully by the government, as opposed to being in its mother's custody, this seems to be an appropriate analogy to illustrate the absurdity of the argument raised.

10

taken to a hospital outside the detention facility for the purpose of childbirth, and the charge for hospital and medical care shall be charged against the funds allocated to the detention facility. The county shall provide for the care of any child so born and shall pay for the child's care until the child is suitably placed outside the prison system."); § 944.24(6), Fla. Stat. ("Any woman inmate who gives birth to a child during her term of imprisonment may be temporarily taken to a hospital outside the prison for the purpose of childbirth, and the charge for hospital and medical care shall be charged against the funds allocated to the institution. The department shall provide for the care of any child so born and shall pay for the child's care until the child is suitably placed outside the prison system."); Delancy v. Booth, 400 So. 2d 1268, 1270 (Fla. 5th DCA 1981) (noting that appellant mother had "no constitutional or statutory right to raise [her] child in prison").

I therefore respectfully dissent in part. Under the limited—agreed to— facts and circumstances underlying the first claim, I find habeas corpus cannot lie and would deny that portion of the petition.